[No. 258. Decided November 2, 1891.]

## REUBEN W. WARREN v. HIS CREDITORS.

CHATTEL MORTGAGES—VALIDITY—SALE OF MORTGAGED GOODS.

Where a chattel mortgage is *prima facie* valid, the burden of showing bad faith in its execution is upon the party denying its validity.

Where a chattel mortgage is given in the ordinary course of business to secure a *bona fide* debt owing by the mortgagor to the mortgagee, it is valid and binding on all parties.

A chattel mortgage, absolute in form, and given for a definite sum as due from the mortgagor to the mortgagee, is valid, although in fact only an indemnity mortgage to secure the mortgagee against liability as joint maker with the mortgagor of certain promissory notes, if there is a *bona fide* liability actually existing.

Where such liability exists, there should be proof showing that it has become absolute, and how much, if anything, is due on the note secured by said mortgage.

Where, under a power to sell for the benefit of the mor'gagee, some of the mortgaged goods have been sold for cash and some for credit, the mortgagee must be charged with the amount, whether received or not.

### Appeal from Superior Court, Thurston County.

On the 5th day of December, 1889, Reuben W. Warren, who was then the owner of a general store and doing a general retail business at Bucoda, Washington, being indebted to certain business men and jobbers of Portland, Oregon, gave them his notes for $1,600 as security for the indebtedness, indorsed by his brother, Moses Warren. In order to secure Moses Warren against loss by reason of his indorsement of these notes, he gave to Moses, on the same day, three promissory notes and a chattel mortgage of his stock of goods, securing the same. These notes and mortgage are made a part of Moses Warren's complaint in intervention in this cause, and are there set forth at length. The chattel mortgage was duly recorded December 7, 1889. At the time of the giving of this mortgage it was agreed by the mortgagor, Reuben W. Warren, that he would keep the goods in his possession and sell them, and turn the proceeds over to Moses Warren until the mortgage was satisfied.

A few days later Garretson, Woodruff, Pratt & Co., wholesale dry goods merchants, of this state, who were creditors of Reuben W. Warren to the extent of $2,208.74, obtained from him as security for their claim three promissory notes, payable to said Garretson, Woodruff, Pratt & Co., amounting to $2,208.74, and a chattel mortgage on his stock of goods, securing the same, which was duly recorded October 11, 1889. These notes and mortgage were given December 10, 1889, and are made a part of Garret-

son, Woodruff, Pratt & Co.'s complaint in intervention herein. At the time of the giving of this mortgage it was agreed that the proceeds of Reuben W. Warren's sales should be applied to the payment of this mortgage next to that of Moses Warren. On or about the 18th day of December, 1891, the sheriff of Thurston county levied on the stock of goods under a number of attachments sued out against the property of Reuben W. Warren. On the 26th day of December, Moses Warren duly demanded possession of the goods in question by virtue of his rights under his chattel mortgage, and on the following day Garretson, Woodruff, Pratt & Co. made a similar demand upon the sheriff for possession of the goods by virtue of their rights under their chattel mortgage. These demands were, at the request of the attaching creditors, ignored by the sheriff.

On the 27th day of December, 1889, Moses Warren duly demanded of the sheriff these goods under the provisions of chap. 33 of the Code of 1881, giving to the sheriff the bond required by law; and on the following day Garretson, Woodruff, Pratt & Co. made a similar demand, giving the bond required by law. The sheriff ignored both of these demands. On the 2d day of January, 1890, Reuben W. Warren filed his petition in insolvency, which is set forth among the pleadings. In these insolvency proceedings the sheriff of Thurston county was made assignee. On March 21, 1891, Moses Warren and Garretson, Woodruff, Pratt & Co. filed their respective complaints in intervention. The court made a final decree declaring the mortgages void and awarding the proceeds of the sale of Reuben W. Warren's stock of goods to the attaching creditors in the order of the priority of the attachments.

It is from this judgment that the intervenors appeal, claiming that their respective mortgages were valid—were anterior to the attachment; that the net proceeds of the sale, $2,601, now in the custody of the court, should be

applied primarily to the payment of their respective mortgages.

*James A. Haight,* and *A. P. Fitch,* for appellants.
*Allen & Ayer,* and *N. S. Porter,* for respondents.

The opinion of the court was delivered by

HOYT, J.—The sole question involved in this case is as to the validity of two certain mortgages made by Reuben W. Warren on his stock of merchandise situated in his store at Bucoda, in this county.   On this question counsel for the respective parties have entered into a general discussion as to the construction to be given by the courts of this state to chattel mortgages by the terms of which the mortgagors are allowed to retain possession and continue to make sales in the ordinary course of business, for the benefit of the business or of the mortgagor.   This question has been carefully briefed and ably argued.   But, as we view the record, the above stated question is not at all involved in the decision of this case; and whether or not this court would feel bound to follow the harsh decision in the case of *Wineburgh v. Schaer,* 2 Wash. T. 328 (5 Pac. Rep. 299), which adopted the rule that mortgages of the kind mentioned were conclusively fraudulent, or that of other states which have adopted the rule that they are *prima facie* valid, or the more equitable medium one that they are presumably fraudulent, but that the good faith of the transaction, when clearly shown, shall have force, are questions too important to be decided until a case arises which squarely presents such an issue.

The mortgages involved in this case were upon their face entirely unobjectionable in form, with the usual condition that the mortgagor might retain possession, but with no authority conferred upon him therein to make any sale of the property mortgaged.   From this it will appear that under the law, as conceded by all the parties, such mort-

gages were *prima facie* valid.   The proof offered, however, tended to show that by oral contracts entered into at the time the mortgages were executed, it was agreed that the mortgagor could sell the property and apply the proceeds to the payment of the mortgages in order of their priority.   No proof was introduced tending to show that the agreement was that the mortgagor could sell for his own benefit, or for the purpose of replenishing the stock of goods mortgaged.   Such being the condition of the mortgages, and the circumstances surrounding their execution, there is no dispute as to the law that such mortgages, if executed in good faith, are valid and binding on all parties.   It will therefore be seen that this case presents more a question of fact than of law.   The mortgages, *if construed as written, or as affected by the contemporaneous agreements, are at least prima facie valid*, and unless such facts appear in the record as to show bad faith in the transaction, they must stand.

We have carefully examined the proof offered in the court below, and have been unable to find anything therein which would warrant us in finding that the mortgages were not made and accepted in the most perfect good faith.   As they were *prima facie* valid, it was not incumbent upon those asserting rights thereunder to show good faith; but, on the contrary, the burden was upon those denying their validity, to show bad faith.   And even if we assume that the burden of proof was upon the mortgagees to show absolute good faith, we think enough appears in the record to establish such fact.   We do not see how even a plausible argument can be constructed upon a contrary theory as to the mortgage held by Garretson, Woodruff, Pratt & Co., the proof showing clearly that in their case the mortgage was given in the ordinary course of business, to secure a *bona fide* debt then owing by the mortgagor to such firm.

As to the other mortgage, it is claimed that while it was

absolute in form, and given for a definite sum, as being due from the mortgagor to the mortgagee, it was in fact only an indemnity mortgage to secure the mortgagee against a liability as joint maker with the mortgagor of certain notes to third parties, and that this fact is sufficient to taint the whole transaction with bad faith. We are unable to draw such a conclusion from the facts so stated. The only effect of such want of form in the mortgage would be to require, from one who would assert rights thereunder, a clear explanation of the circumstances surrounding its execution; and if in fact a *bona fide* liability existed, a mortgage thus absolute in form should be sustained to protect the mortgagee from such liability as fully as would a mortgage which expressed the contract of indemnity on its face. Upon this question of liability the testimony in the record is not as satisfactory as it should be, but, assuming it to be true (and it is entirely uncontradicted), enough appears therefrom to show that such a liability exists. While the proof satisfactorily shows the liability, it does not satisfactorily show that such liability had become absolute, and it is therefore uncertain as to how much, if anything, is due on said mortgage, and it will therefore be necessary, before full justice can be done to the parties to this action, that there should be further proofs upon that question.

It appears from the proofs that under the power to sell for the benefit of the mortgagee some of the goods covered by the mortgage had been sold for cash and some for credit, which, under well settled principles of law, must be charged to the mortgagees, whether they received the same or not.

The decree of the court below holding such mortgages to be fraudulent, and distributing the proceeds upon that basis, must be set aside, and the cause remanded, with instructions to take proofs as to the amount which has been paid on account of the liability for which the mortgage to Moses Warren was an indemnity, and to deduct from the

amount thereof, not exceeding the amount named in such mortgage, the cash and credit sales made by the mortgagor after the execution of said mortgage, and satisfy the remainder out of the money in the registry of the court, and apply the residue of such moneys on the mortgage of Garretson, Woodruff, Pratt & Co; the appellants herein to recover of the attaching creditors the costs of this appeal.

ANDERS, C. J., and DUNBAR, SCOTT and STILES, JJ., concur.