[No. 691.   Decided October 26, 1892.]

LUCIUS T. BENHAM AND THOMAS S. GRIFFITH, *Respondents*, v. DAVID T. HAM *et al.*, *Appellants*.

CREDITOR'S BILL — ATTACHMENT LIEN — ASSIGNMENT FOR BENEFIT OF CREDITORS — PREFERENCE — CHATTEL MORTGAGE — VALIDITY.

An attachment lien is sufficient to support a creditor's bill, without first obtaining judgment, where it is made to appear by the bill that the debtor is insolvent, and that the issuing of the execution would be of no practical utility.

The fact that a debtor in failing circumstances makes an assignment for the benefit of creditors within three days after having given a mortgage on his stock of merchandise to secure one of his creditors, the mortgagee not being aware of any intent on the mortgagor's part to make the assignment, does not make the execution of the mortgage a part of the same transaction as the assignment, thereby creating a preference and rendering both the mortgage and assignment invalid.

A chattel mortgage upon a stock of general merchandise, which allows the mortgagee to remain in possession, under an oral agreement that he should sell the stock and apply the proceeds to the extinguishment of the mortgage debt, is *prima facie* valid and binding on all parties.

*Appeal from Superior Court, Spokane County.*

*Jay H. Adams*, and *Jones & Voorhees*, for appellant:

An attachment lien will not support a creditor's bill brought for the purpose of setting aside a fraudulent conveyance, but such a bill must be supported by a judgment upon which execution has been returned *nulla bona*. *Thur-*

*ber v. Blanck*, 50 N. Y. 80; *Martin v. Michael*, 23 Mo. 50; *Weil v. Lankins*, 3 Neb. 384; *Weinland v. Cochran*, 9 Neb. 480; *Tennent v. Battey*, 18 Kan. 324; *Melville v. Brown*, 16 N. J. Law, 364; *Bigelow v. Andress*, 31 Ill. 322; *Goembel v. Arnett*, 100 Ill. 34; *Reubens v. Joel*, 13 N. Y. 488; *Crippen v. Hudson*, 13 N. Y. 161; *McMinn v. Whelan*, 27 Cal. 315; *Jones v. Green*, 1 Wall. 330; *Ex parte* Boyd, 105 U. S. 653; *Wiggins v. Armstrong*, 2 Johns. Ch. 144; *Brinkerhoff v. Brown*, 4 Johns Ch. 671.

The appellant, Ham, in procuring the execution to himself of the mortgage in controversy, was obtaining a security which he had both a legal and moral right to take, even though he knew that his debtor was insolvent and that an enforcement of his security would leave his debtor unable to meet his other obligations.    Under no established rule of contractual construction can the mortgage and deed of assignment in the case at bar be held to operate as a single contract. *Garretson v. Brown*, 26 N. J. Law, 425; *Gage v. Parry*, 29 N. W. Rep. 824; *Sweetser v. Camp*, 29 N. W. Rep. 506; *Root v. Potter*, 26 N. W. Rep. 682; *Farwell v. Jones*, 19 N. W. Rep. 241; *Nelson v. Gary*, 19 N. W. Rep. 630; *Home Bank v. Sanchez*, 131 Ill. 330; *Weber v. Mick*, 131 Ill. 520; *Hier v. Kaufman*, 134 Ill. 218; *Gilbert v. McCorkle*, 110 Ind. 215.

*Post & Avery*, for respondents:

An attaching creditor has a right to bring suit in a court of equity in aid of his attachment. *Falconer v. Freeman*, 4 Sandf. Ch. 565; *Bates v. Plonsky*, 28 Hun, 112; *Williams v. Michenor*, 11 N. J. Eq. 520; *Robert v. Hodges*, 16 N. J. Eq. 299; *Curry v. Glass*, 25 N. J. Eq. 108; *Heyneman v. Dannenberg*, 6 Cal. 376; *Scales v. Scott*, 13 Cal. 76; *Hahn v. Salmon*, 20 Fed. Rep. 801; *Case v. Beauregard*, 101 U. S. 688; *Quarl v. Abbett*, 102 Ind. 234; *Ward v. McKenzie*, 33 Tex. 297; *Tappan v. Evans*, 11 N. H. 311; *Stone v. Ander-*

*son,* 26 N. H. 506; *Pendleton v. Perkins,* 49 Mo. 565; *Meacham Arms Co. v. Swarts,* 2 Wash. T. 412; *Thompson v. Caton,* 3 Wash. T..31.

If a debtor who contemplates making an assignment gives a creditor a lien on the whole or part of his property by confession of judgment, chattel mortgage or otherwise, and subsequently makes an assignment for the benefit of his creditors, such assignment, as well as the judgment, chattel mortgage or lien, is void, where assignments for the benefit of creditors must be "for the benefit of all creditors in proportion to the amount of their respective claims." They are construed together and are contrary to the statute against preferences. *Kellogg v. Root,* 23 Fed. Rep. 525; *Heineman v. Hart,* 20 N. W. Rep. 792; *Watkins National Bank v. Sands,* 28 Pac. Rep. 618; *Manning v. Beck,* 29 N. E. Rep. 90; *Berger v. Varrelmann,* 27 N. E. Rep. 1065; *Receivers v. Paterson Bank,* 10 N. J. Eq. 16; *Livermore v. McNair,* 34 N. J. Eq. 478; *Clapp v. Nordmeyer,* 25 Fed. Rep. 71; *Perry v. Holden,* 22 Pick. 269; *Van Patten v. Burr,* 3 N. W. Rep. 524; *Doggett, etc., Co. v. Herman,* 16 Fed. Rep. 812; *Burnham v. Haskins,* 44 N. W. Rep. 341; *Putney v. Freisleben,* 11 S. E. Rep. 337; *Backhaus v. Sleeper,* 27 N. W. Rep. 409.

The opinion of the court was delivered by

DUNBAR, J.—The first question that presents itself in this case is, is it necessary to reduce a claim to judgment, issue an execution, and secure a return of *nulla bona* made thereon, to support a creditor's bill? Or is an attachment lien a sufficient basis for such an action? Many cases have been cited both by appellant and respondents on this proposition, and from an investigation of the cases it must be · conceded that the weight of opinion, considering both the old cases and the new, sustains the doctrine that the claimant must press his claim to judgment, send out his execu-

tion and show a fruitless search for property before he can appeal to a court of equity to set aside a fraudulent conveyance. But we are satisfied that the trend of modern decision is the other way. At all events the decisions of courts are so conflicting that this court feels justified in adopting that rule which seems to it best calculated to protect the interests of *bona fide* creditors from fraudulent transactions. We think no good purpose can be subserved by compelling a creditor to await his judgment, but that the effect will be to aid dishonest debtors in fraudulently disposing of their property. And especially in view of the language used by the supreme court of the territory in *Meacham Arms Co. v. Swarts*, 2 Wash. T. 412 (7 Pac. Rep. 859), and *Thompson v. Caton*, 3 Wash. T. 31 (13 Pac. Rep. 185), we feel justified in now deciding that, where a lien has been obtained by attachment on the property in controversy, and it appears by bill that the debtor is insolvent, and the issuing of an execution would be of no practical utility, the obtaining of the judgment and the issuance of an execution thereon is not a necessary prerequisite to equitable interference.

The next question to be considered involves the validity of the mortgage. The mortgage from Doty to Ham was executed on Friday, November 13, and the assignment of Doty to White was executed the following Monday, to wit, November 16. The court below held that the assignment was valid, but that the mortgage was void. It is contended by appellant that under the circumstances of this case, as shown by the proof, the mortgage to Ham and the assignment to White should be considered together, and being so construed that they should both be held to be void as being contrary to the statutes against preferences. And many cases are cited by both appellant and respondents, respectively, in support of, and opposed to, this doctrine. If the contention of the appellant on this proposition be

true, the judgment of the court cannot be sustained either on reason or authority, for if the instruments are to be construed together it plainly follows that if the mortgage is void the assignment is void also.    Neither can be held to be void excepting on the theory that the two together comprised a general scheme to prevent an equal distribution of the estate among the creditors, and of course it logically follows that, being construed together, they must stand or fall together.

We have carefully examined all the authorities cited on this proposition, and do not think that even many of the authorities cited by appellant sustain his contention in their application to this particular case.    In *Berger v. Varrelmann*, 127 N. Y. 281 (27 N. E. Rep. 1065), which was one of the strongest cases cited by appellant, the court seems to have felt itself bound by the findings of the lower court. The contention of the judgment creditor in that case was that the lower court did not find as a fact that the assignors confessed the judgment in contemplation of making a general assignment, as a part thereof, and for the purpose of preferring the creditor in that case, and that the confession of judgment, the execution and levy were made in fraud of the general assignment, but that the trial judge stated such fact as a conclusion of law.    And the appellate court said:

"This contention is not well founded; for it is well settled that, though a 'finding of fact' be called a 'conclusion of law,' and improperly classified as such, in the decision signed, it will, for the purpose of upholding the judgment, be given the same effect as though embraced within, and designated as one of, the findings of fact."

Of course if the court accepted these findings of fact, it could not do otherwise than hold the transactions to be fraudulent.    It is, after all, a question of intention; a question of the *bona fides* of the transaction.    If it is shown to

be a fact that the instruments were intended to be a part of one transaction, then, of course, they must be construed together, no matter whether they were executed on the same day or on different days. And it must be determined from the circumstances surrounding each particular case whether or not it falls within the rule. It is an undisputed proposition of law that the creditor has a right to secure the payment of his debts, even to the extent of absorbing all the estate of his debtor, and to the exclusion of the claims of all other creditors. This is nothing more than the exercise of good business judgment and prudence, and no presumption of fraud will attach by reason of the exercise of this right, simply because a short time after the securing of the debt the debtor attempts to claim the benefits of the assignment law. The length of time elapsing between the securing of the debt and the execution of the deed of assignment would no doubt be a circumstance that the court would have a right to take into consideration, but it should go no further than that. If the obtaining of security for a deed is presumed to be cotemporaneous with the assignment, if made a short time prior to the assignment, how short a time must it be to cause the presumption to attach? Must it be a day, or a week, or a month? An attempt to answer this question shows the folly of trying to fix a time limit. In one case it might appear that the instruments were part of the same transaction if they were executed a month apart; and in another case the mortgage might be given on the same day with the execution of the assignment, and both be executed in perfectly good faith. As was said by the supreme court of Michigan in *Root v. Potter*, 59 Mich. 506 (26 N. W. Rep. 682):

"There is nothing in the assignment law which undertakes to avoid dealings previous to the assignment, whether near or remote in point of time, which were in no way connected with it in the intention of the parties."

The true theory is as expressed by the court in *Burn-ham v. Haskins*, 79 Mich. 35 (44 N. W. Rep. 341), and it cannot be carried to any further extent, that the assignment must be looked to to discover the preference, and that the transactions to be fraudulent must be found to have been made in separate form to avoid the effect of annulling them if they were included in the assignment itself. When this motive appears, without doubt, the transaction would be void, even under our statute, which is not so broad as many of the statutes under which the cases are cited.

In the case last above cited, the court held the mortgage void, but it gives its reasons for the holding as follows:

"The testimony, which it would be useless to recapitulate, satisfies us that the mortgagees well knew of the intention of Goodrich to make an assignment at the time the mortgage was executed, and that the design of the parties to the instrument was to give the stepfather and mother a preference over other creditors in the conveyance he was about to make for their benefit."

No such case is presented here, as we read the testimony in this case. There is no testimony whatever which goes to prove a collusion between Doty and Ham. Nothing to show that Ham knew that Doty contemplated making an assignment, even if such knowledge would prevent Ham from legally securing his debt, a point not necessary to be decided in this case. Ham swears that he did not know that Doty thought of making an assignment, and that they had no conversation or understanding concerning that subject. And Doty swears to the same thing, and further that he did not intend to make an assignment until the day after the mortgage was given, when he found he could not make an arrangement with Ham to "restock the store, and give him a chance to keep up the business." There is nothing unreasonable in this statement. Men who are

in failing circumstances, and who are pressed to the wall by importunate creditors, are frequently compelled to change their minds and adopt new plans very hurriedly. All that we can gather from the testimony is that Ham was a little more industrious in securing his debt than the other creditors, and we think the law should protect him in the advantage he has secured by his superior diligence.

The mortgage in this case is the ordinary mortgage, with an oral agreement that the mortgagee should sell the mortgaged property, which was a stock of general merchandise, and apply the proceeds to the extinguishment of the debt. It is not questioned that the mortgage was given to secure a *bona fide* debt.   The mortgage is, therefore, *prima facie*, valid, and is binding on all the parties. *Warren v. His Creditors*, 3 Wash. 48 (28 Pac. Rep. 257); *Ephraim v. Kelleher*, 4 Wash. 243 (29 Pac. Rep. 985).

Judgment is reversed, and cause remanded with instructions to enter judgment for defendant with costs.

ANDERS, C. J., and STILES, SCOTT and HOYT, JJ., concur.