[No. 1896. Decided February 4, 1896.]

ELIZABETH DILLON, *Respondent*, v. W. F. DILLON, *Defendant*, COMMERCIAL NATIONAL BANK OF PORTLAND, OREGON, *et al., Appellants.*

CHATTEL MORTGAGES — VALIDITY — DESCRIPTION OF PROPERTY — APPLICATION OF PROCEEDS — MORTGAGE BY HUSBAND TO WIFE OF COMMUNITY PERSONALTY.

A chattel mortgage is not void for uncertainty in the description, when it describes the property as "The entire stock of merchandse, wares and goods now in and thereafter to be kept in the store and store room [location described], owned and kept by [the mortgagor], consisting of clothing, gents' furnishing goods, boots and shoes, hats, caps, oil clothing, rubber boots and shoes, cigars and tobacco, together with all the store fixtures and articles therein kept of every description."

The fact that no provision is made in a chattel mortgage upon a stock of goods for the application of the proceeds of sales thereof to the reduction of the debt secured will not render the mortgage void, when it appears that the proceeds of all the goods sold were applied in payment of the ordinary expenses of the business and in the reduction of the debt, and that the identity of the mortgaged property had not been rendered difficult by the addition of other goods to the stock.

A chattel mortgage of the community personalty may be executed by a husband to his wife to secure her for loans from her separate estate.

Appeal from Superior Court, Cowlitz County.—Hon. A. L. MILLER, Judge. Affirmed.

*Durham, Platt & Platt, G. G. Gammans, J. B. Thompson, W. F. Magill,* and *George W. Rowan,* for appellants.

*E. W. Ross,* and *Thomas N. Strong,* for respondent.

The opinion of the court was delivered by

GORDON, J.—The respondent brought suit in the lower court to foreclose a chattel mortgage given by

the defendant, W. F. Dillon, her husband, on a stock of merchandise and store fixtures, to secure the payment of his promissory note for the sum of $3,500.00, said note bearing even date with said mortgage and payable six months thereafter. The Commercial National Bank, one of the appellants, was made a party defendant because of its being a judgment creditor of the said mortgagor, and having, prior to the institution of this suit, levied upon the mortgaged property. The appellant, Sweet, Dempster & Company, a corporation, having levied a writ of attachment upon said mortgaged goods, was also made a party defendant. The appellant Hibbard, being the purchaser of the property upon the execution sale based upon the judgment obtained by the appellant Commercial National Bank, was also a party defendant. The defendant Dillon made default; each of the other appellants appeared and answered, and in their several answers put the respondent upon proof of all of the material allegations of her complaint, and further set up fraud, and that the property covered by the mortgage was community personal property. The trial below was to the court without a jury. We adopt as a further statement, the following findings of the court which are not questioned by either party, viz.:

"The plaintiff and the defendant, W. F. Dillon, are husband and wife, and during all times in the complaint mentioned resided and cohabited together as such in the town of Castle Rock, Cowlitz county, State of Washington.

"That on and prior to the tenth day of March, 1893, the defendant, W. F. Dillon, was conducting and carrying on business as a merchant at said Castle Rock, and on said day said defendant owned and was in possession of the personal property described in the mortgage in the complaint set forth.

. "That on March 10, 1893, W. F. Dillon gave his wife, the plaintiff, his promissory note for $3,500, payable six months after date with interest at six per cent. per annum from maturity, with a provision for reasonable attorney's fee in case of suit to collect the same, and interest to draw interest, the same as the principal, at the end of every three months.

"That at the time of giving said note, he executed to his wife a chattel mortgage upon the following described personal property situated in Cowlitz county, State of Washington, to-wit: The entire stock of merchandise, wares and goods now in and thereafter to be kept in the store and store room on Cowlitz avenue in the town of Castle Rock, owned and kept by said W. F. Dillon, under the firm name and style of W. F. Dillon & Co., consisting of clothing, gents' furnishing goods, boots and shoes, hats, caps, oil clothing, rubber boots and shoes, cigars and tobacco, together with all the store fixtures and articles therein kept of every description; and said mortgage was duly acknowledged and witnessed, and had indorsed thereon the affidavit of good faith required by law, and was on March 13, 1893, recorded in the office of the auditor of said Cowlitz county.

"That on May 3, 1894, the Commercial National Bank of Portland, Oregon, defendant herein, commenced an action against defendant, W. F. Dillon, in the above entitled court, and caused a writ of attachment to issue and levied thereunder upon certain goods, wares and merchandise, and thereafter recovered judgment against the said W. F. Dillon, and caused execution thereon to issue, and by virtue thereof, the said goods, wares and merchandise were on August 31, 1894, sold to the defendant, George L. Hibbard, subject to the mortgage of plaintiff; and that on July 6, 1894, the defendant, Sweet, Dempster & Co., commenced an action against said W. F. Dillon in said court, and caused a writ of attachment to issue, and the said goods, wares and merchandise to be levied upon subsequent to the levy and the action of the Commercial National Bank aforesaid."

The trial court found for the respondent, and from
the decree of foreclosure and sale appellants bring the
case to this court upon appeal. The principal con-
tentions relied upon to secure a reversal may be stated
to be as follows:

1st. That respondent's mortgage was without con-
sideration.

2d. That the mortgage was fraudulent in fact, and
was made to hinder, delay and defraud the creditors
of W. F. Dillon (the mortgagor).

3d. That the subsequent conduct of the respondent
and her husband made the mortgage operate as a fraud
upon his creditors rather than a security to plaintiff.

4th. That the mortgage is void for uncertainty in
the description of the property, and also for the rea-
son that the mortgage shows that the property in-
tended to be covered thereby is a stock of goods, and
no provision is made for the application of the pro-
ceeds of sales thereof.

5th. A mortgage of community personal property
by the husband to his wife is of no effect and is void.

The first and second of these contentions are to be
determined solely from a consideration of the evi-
dence, which we have examined, and while too vol-
uminous to be given detailed notice in this opinion,
we think that it overwhelmingly sustains the follow-
ing findings of the trial judge, viz.:

" That at the time of the execution of said note and
mortgage the plaintiff was the owner of valuable
property in the city of Portland, state of Oregon, in-
herited from her father and also money inherited as
aforesaid to the amount of $2,200 in her own right as
her separate property, and received from the rents
and profits of her said separate property the sum of
$78 per month from March 1, 1892, from which she
loaned to defendant W. F. Dillon, prior to the execu-

tion and delivery of the note and mortgage the sum $1,700, $700 of which was repaid, and by writing signed by her, prior to the execution of said note and mortgage, she bound herself as surety for the said defendant to Charles P. Kellogg, one Mr. Wells of Chicago, and the Eagle Woolen Mills of Oregon, and during the month of March, 1893, loaned to said defendant the further sum of $500, and during the month of February, 1894, was compelled to and did pay upon the written securities aforesaid for the said defendant the sum of $2,000, all from her separate property and the rents, profits and proceeds thereof, making a total sum of three thousand five hundred ($3,500) dollars, no part of which has been paid.

That said note and mortgage were given in good faith and without any design to hinder, delay or defraud any creditor or creditors and for full consideration.

That the goods, wares and merchandise described in said mortgage are now in a store building in the town of Castle Rock in possession of defendant George L. Hibbard."

The third proposition above noticed is based upon certain testimony and conduct of the respondent and her husband, but we think there is nothing in the record which would have justified the court in reaching the conclusion in this regard for which appellants' counsel contend; on the contrary, we think that the conduct of the parties, as evidenced by the record, was entirely consistent with the presumption that the mortgage was executed in good faith for the purpose of securing a valid existing indebtedness, and we find nothing in the evidence tending to impeach or discredit the validity of the mortgage.

Fourth, we think the description of the mortgaged property sufficient. It appears from the evidence, and the court found, that the proceeds of all the goods sold by the mortgagor after the execution of the mort-

gage were applied in payment of the ordinary expenses of the business, and in the reduction of the claims for which the respondent was a surety (as noticed in the finding hereinbefore set out). It also appeared from the evidence that no goods were purchased by the mortgagor or added to the stock after the execution of the mortgage; hence, the identity of the mortgaged property was in no wise rendered difficult or uncertain.

Fifth, the appellants claim that the mortgaged goods were the personal property of the community consisting of the respondent and her husband, and that the husband had no authority under our law to execute a valid mortgage to his wife upon property of that character, and that the mortgage, if valid, would convey to the wife a greater interest in such community personal property than that remaining in the husband. It is not contended, nor could it under our law well be claimed, that the husband could not mortgage or sell his separate personal property to his wife, and we see no reason in holding that he could not do likewise with the community personal property. The consideration for this mortgage was personal funds of the wife, over which the husband had no dominion or control. Why, under such circumstances, should the law prevent his executing to her the same security for such advances as he manifestly might give a stranger?

In our opinion the law does not prevent the wife from protecting the community property by loaning to it from her separate estate, and in a time of peril, and her interest in such community property might well be promoted by so doing. The individual estates of the spouses and the community estate are so closely related as to render it necessary that the right of the members of the "community" to come to its aid and

assistance should be recognized, and that they may do so neither the letter nor the spirit of the statute forbids.

Without special reference to the other errors assigned we may say that, upon examination, we are satisfied that no reversible error was committed by the trial court, and its decree is affirmed.

Hoyt, C. J., and Anders, Dunbar and Scott, JJ., concur.