[No. 11924.  Department Two.  August 11, 1914.]

## NASON & COMPANY, *Appellant*, v. JOHN F. STACK, *Respondent*.[1]

CHATTEL MORTGAGES—STOCK OF GOODS—PERMITTING SALES—REDUCTION OF DEBT—VALIDITY.  A chattel mortgage of a stock of goods providing that the mortgagor might reduce said stock of goods as low as $12,000, but in such event one-half the reduction should be paid to the mortgagee on his note and mortgage, is not void nor fraudulent as to creditors unless given for the purpose of aiding the debtor in defrauding such creditors.

SAME—PROVISION FOR RETENTION OF PROCEEDS—VALIDITY.  The provision permitting the mortgagor to retain one-half the proceeds of sales which reduced the stock to $12,000 is not shown to have been included for the purpose of defrauding creditors, where the only evidence as to intent of the parties in including the provision in the mortgage was that of the mortgagee, who construed it as meaning that he was to receive one-half the proceeds in case the stock should be reduced to $12,000, and that the payment of one-half the reduction to the mortgagee would leave ample funds in the hands of the mortgagor to carry on the business and meet current bills; the stock, though reduced, being considered ample in amount for the protection of all parties interested.

SAME—PROCEEDS OF SALE—ACCOUNTING—PAYMENT OF MORTGAGE.  A provision in a chattel mortgage of a stock of goods permitting the mortgagor to reduce its stock as low as $12,000, but in event of such reduction one-half the proceeds should be paid to the mortgagee on his note and mortgage, does not make the mortgagor the agent of the mortgagee to receive the proceeds of sale for application on the mortgage indebtedness, and thereby require an accounting by the mortgagor and a reduction of the mortgage by one-half the proceeds of such sales whether paid to the mortgagee or not.

[1]Reported in 142 Pac. 477.

Appeal from a judgment of the superior court for Walla
Walla county, Mills, J., entered November 4, 1913, upon
findings in favor of the defendant, in an action to declare
void a chattel mortgage.   Affirmed.

*Sharpstein & Sharpstein,* for appellant.

*John C. Hurspool* and *Rader & Barker,* for respondent.

MORRIS, J.—In August, 1912, respondent Stack was the
owner of a paint and paper store, at Walla Walla, and dur-
ing that month sold the business to George C. Wilson, for
the sum of $16,000.   On the 27th day of August, Wilson
executed to Stack a mortgage for $4,000, to secure the
remainder of the purchase price.   The validity of this mort-
gage is the question submitted by the appeal, it being con-
tended, (1) that the mortgage was void in that it allowed
the mortgagor to remain in possession of the stock and sell
the same at retail without providing that he should account
to the mortgagee for the proceeds of such sales; (2) that
the mortgage is void, even though it should be construed to
provide that the mortgagor should account for the proceeds
of the sales to the mortgagee; and (3) that, if it should be
held that one-half of the proceeds of the stock of goods
should be accounted for and applied on the mortgage, then
the court should have ordered an accounting to ascertain
the value of the goods sold by the mortgagor, and should
have reduced the mortgage indebtedness by one-half of such
amount so sold whether received by the mortgagee or not.

The provision in the mortgage which gives rise to these
several contentions is as follows:

"It is further agreed by the parties to this mortgage that
the said George C. Wilson may reduce said stock of goods
this day mortgaged to as low as $12,000, but in the event
said stock is reduced, an amount equal to one-half of the
reduction shall be paid to the said John S. Stack on this
said note and mortgage, said reduction to be determined by
the invoice thereof."

This mortgage was given to respondent Stack to secure the balance due him on the purchase price of the stock and fixtures contained in the store. Shortly after the sale to Wilson, Stack left Walla Walla, and between that time and July, 1913, he visited the store approximately once a month; but it does not appear that there was anything to apprise him of the fact that Wilson was not complying with the provisions of the mortgage, until July, 1913, when a trade of the stock with a Mr. Borne was contemplated, and Stack was asked by Wilson to come to Walla Walla and arrange for the transfer of the lease and mortgage. He then learned that some of Wilson's bills payable were long past due, that his creditors were objecting to further extension of credit, and that an inventory had been taken of the stock showing the value of the stock on hand to be $13,200. He immediately took steps to obtain the money due him. We cannot find that, up to that time, he had knowledge that Wilson was not keeping up the stock. The value of the stock and fixtures at the time of the sale to Wilson was $16,000. A year later it was $2,800 less.

We held, in *Ephraim v. Kelleher*, 4 Wash. 243, 29 Pac. 985, 18 L. R. A. 604, that a chattel mortgage was not void because it permitted the mortgagor to remain in possession and dispose of the goods at retail, appropriating part of the proceeds of such sales to replenishing the stock and paying current expenses of the business, instead of applying all of the proceeds to liquidation of the mortgage; nor was such a mortgage fraudulent as to other creditors unless it appeared that it was given to aid the mortgagor in defrauding such creditors, and that the fraudulent character of the mortgage, when assailed as such, must be determined as a fact. This rule was followed in *Benham v. Ham*, 5 Wash. 128, 31 Pac. 459, 34 Am. St. 851; *Sanders v. Main*, 12 Wash. 665, 42 Pac. 122; *Dillon v. Dillon*, 13 Wash. 594, 43 Pac. 894; *Adams v. Dempsey*, 22 Wash. 284, 60 Pac. 649, 79 Am. St. 933; *Id.*, 29 Wash. 155, 69 Pac. 738; *Van*

*Winkle v. Mitchum,* 66 Wash. 296, 119 Pac. 748. These cases are controlling as to the validity of this mortgage, the stipulation in this mortgage being in effect that, if the stock be reduced as low as $12,000, one-half of the proceeds of the stock so sold should be accounted for and paid to the mortgagee. In this case there were no other creditors at the time the mortgage was given, and no fact appears that would attach any fraudulent intent. In this respect, the case is not apposite to those cases where an attempt is made by an insolvent debtor to prefer one creditor over another.

Upon the second contention, the only evidence in the case as to intent of the parties in including the provision for the reduction of the stock to $12,000, but providing that one-half of the reduction should be paid to the mortgagee, is that of Stack, who construed it as meaning that he was to receive one-half of the proceeds of sales in case the stock should be reduced to $12,000. That reduction was the limit and, so far as we can observe, there is nothing to gainsay respondent's position that it was considered that a $12,000 valuation would represent all the stock required in the business, and that the payment of one-half of this reduction to the mortgagee would leave ample funds in the hands of the mortgagor to carry on his business and meet his current bills. In this regard, the mortgage provides that the stock shall be kept up so that at all times it will invoice at least $12,000, this amount evidently being considered at the time as ample for the protection of all parties interested. There is nothing from which we can hold, as contended by appellant, that permitting the mortgagor to retain one-half of the proceeds of sales which reduced the stock to $12,000 deprived the creditors of the right to collect their indebtedness out of the property unless they were prepared to take care of the mortgage. Nor do we, in sustaining this mortgage, have to approximate the percentage of reduction beyond which it would not be proper to go. It is enough to say that, in this case, we find nothing requiring us to hold

that, because of the provision contained in this mortgage, it must be held invalid.

On the third contention, appellant's argument is that, if the mortgagor was bound to account for one-half of the proceeds of sales, then the mortgagor was the agent of the mortgagee in releasing each separate item as sold from the lien of the mortgage and accounting to the mortgagee of the proceeds; and that, under *Warren v. His Creditors*, 3 Wash. 48, 28 Pac. 257, an accounting should have been ordered and the mortgage reduced by one-half of the proceeds of such sales, whether paid to the mortgagee or not. An accounting was ordered in the *Warren* case because the mortgage was given to secure the mortgagee against liability as joint maker with the mortgagor of certain notes to third parties; and while the facts showed such a liability existed, it did not appear that such liability had become absolute, or how much, if anything, would be due the mortgagee on account of any payment he was compelled to make as joint maker on the notes. For this reason, it was held that the matter could not be properly determined until further proof should establish the extent of this liability, and an accounting was ordered to ascertain this amount; and since the only power of sale in the mortgage was for the benefit of the mortgagee, the proceeds of such sales should be, on such account, charged to the mortgagee, whether received or not. In other words, the mortgagee had constituted the mortgagor his agent to receive these amounts for application on the mortgage indebtedness, and having done so, must give credit for all such amounts so received by his agent. We do not think that such a rule should obtain here, since the reasons for its announcement are lacking.

We have not attempted to discuss the cases cited by appellant, some of which apparently support his contentions. They are from states recognizing a different rule from that obtaining here. We prefer to follow the rule, well established in this state, that, in the absence of any showing of

fraud or any intent to in any manner hinder or delay other creditors, mortgages of this character should be sustained as representing an attempt between debtor and creditor to secure the payment of honest debts.

The judgment is affirmed.

CROW, C. J., PARKER, FULLERTON, and MOUNT, JJ., concur.