[No. 14093. *En Banc.* April 29, 1918.]

# W. W. KEYES, *Trustee, Appellant,* v. R. L. SABIN *et al.,* *Respondents.*[1]

ASSIGNMENTS FOR BENEFIT OF CREDITORS—PRIORITIES—UNRECORDED CHATTEL MORTGAGE. An assignee for the benefit of creditors under a consummated assignment, who acquired possession of the property without knowledge of an unrecorded chattel mortgage, can assert priority over the mortgage the same as the creditors could have done under assignment directly to them.

SAME — TITLE ACQUIRED. A consummated assignment for the benefit of creditors under which the assignee takes possession prior to the recording of a prior mortgage creates more than a lien in favor of general creditors, who acquire ownership and at least equitable title.

CHATTEL MORTGAGES — VALIDITY — STOCK IN TRADE — SALES AND PROCEEDS—RIGHTS OF CREDITORS. A chattel mortgage on a general stock of merchandise. is void as to creditors of the mortgagors, where the stock was left in possession of the mortgagors with power to sell in the usual course of trade without any agreement to apply any part of the proceeds to the satisfaction of the mortgage debt.

SAME—FAILURE TO RECORD. A chattel mortgage is void as to creditors of the mortgagors where it was not recorded within ten days after its execution, nor until after an assignment for the benefit of creditors had been made and the assignee had taken possession; since the assignment created a specific lien for the benefit of creditors; Rem. Code, §§ 3670, 3660, requiring recording within ten days after execution as against creditors and subsequent purchasers or incumbrancers in good faith.

Appeal from a judgment of the superior court for Cowlitz county, Darch, J., entered December 21, 1916, upon findings in favor of the defendants, in an action to establish the lien of a chattel mortgage as a prior claim against an insolvent estate, tried to the court. Affirmed.

*W. W. Keyes,* for appellant.

*Teiser & Smith,* for respondents.

[1]Reported in 172 Pac. 835.

FULLERTON, J.—On March 4, 1915, W. A. Williams and B. I. Williams, doing business as W. A. Williams & Company, were conducting a general merchandise store at Castle Rock, in this state. Being then indebted to the Sperry Flour Company and the Puget Sound Flouring Mills Company, who through their agent were pressing for payment, they executed to the appellant Keyes, as trustee for the use of the creditors named, some eight promissory notes, aggregating the amount of the indebtedness, and attempted to secure the notes by a chattel mortgage covering their stock of merchandise. The notes divided the indebtedness into substantially equal payments, the first becoming due on April 4, 1915, and the remainder in order monthly thereafter, the last falling due on November 4, 1915. The mortgage was in form that commonly used in this state for mortgaging specific chattels. It covenanted that, if the sum of money represented by the notes be paid according to the tenor and effect of the notes, the mortgage should be void, but that, "if default be made in the payment of said sum of money or the interest thereon or any part thereof at the time the same shall become due, or any attempt shall be made to remove any of said property from said county or to dispose of the same without the written consent of" the mortgagee, then the entire indebtedness should become due and payable and the mortgage subject to foreclosure. There was an understanding between the mortgagees and the mortgagor, shown by the testimony of the agent taking the mortgage, that the mortgagors should remain in possession of the property and continue their business as they did prior to its execution. The court found, however, that there was no agreement, either in writing or by parol, that any part of the proceeds arising from the conduct of the business should be re-

tained by the mortgagees for application upon the
mortgage debt.

The mortgage was not recorded until March 27, 1915.
Between the date of its execution and the date of the
recording, namely, March 20, 1915, the mortgagors
made a common law assignment of their property to
the respondent Sabin for the benefit of their creditors,
the assignment including the stock of goods covered by
the mortgage. Immediate possession of the property
was taken by the assignee, and he was in such posses-
sion when the mortgage was recorded. It was found
that the assignee had no notice of the mortgage at the
time the assignment was made, and while there is no
finding on the question, it was not shown that any of the
creditors of the assignors other than the beneficiaries
of the mortgage had such notice.

The mortgagee did not attempt to disturb the as-
signee in his possession of the property, but filed his
claim with the assignee as a creditor, claiming a pref-
erence over other creditors to the extent of his mort-
gage. The assignee continued in possession of the
property until he finally disposed of it and reduced its
value to cash. He, however, refused to recognize the
mortgagee's claim as a preference claim, whereupon
the present action was begun to establish it as such.
The trial court held the mortgage void as to the general
creditors of the mortgagors; held, also, that the as-
signee could assert its invalidity as the representative
of the creditors, and denied the claim of preference.
From a judgment entered in accordance with such hold-
ings, this appeal is prosecuted.

Taking up the assignments of error in a somewhat
different order from that in which they are presented in
the brief of the appellant, the first and principal con-
tention is that the assignee is not in a position to assert
the invalidity of the mortgage. It is argued that the

assignee takes only such title as the assignor had, and as the mortgage was good as between the mortgagors and the mortgagee, it is good as between the assignee and the mortgagee. But we cannot think the relation here assumed correctly represents the assignee's position. It is true, unquestionably, that if there was a valid and subsisting lien on the property assigned, good as against all the world, or if the title to any of the property was defective in the assignors, the assignee would take the property subject to such lien or defect. But it does not follow that he takes the property subject to all inchoate or imperfect liens, invalid as to certain persons although valid as between the parties thereto. The assignee holds the property in trust for certain designated persons; in this instance, the creditors of the assignors. In his individual right he acquired nothing by the assignment. He is but the mediary through whom the title to the assigned property was conveyed to creditors. If, therefore, these creditors, the actual beneficiaries of the assignment, could have acquired a valid title against any inchoate or imperfect lien upon the property by an assignment made directly to them, they can acquire such a right by an assignment made to another for their benefit. It cannot be doubted, we think, that, if the assignment had been made directly to the creditors, and the mortgage the appellant seeks to assert is invalid as against them, they could assert its invalidity in any suit against them brought to enforce the mortgage. If they could do this in their individual capacities, there is no reason why they cannot do it through their representative.

It will be remembered that this is a consummated assignment. Not only was there an assignment of the property, but it was taken possession of by the assignee and is still held by him although in a substituted form. Had the mortgagee obtained possession of the

mortgaged property prior to the assignment under a defectively executed mortgage, or possession after the assignment but prior to the time it was reduced to possession by the assignee, it may be that the assignee could not have recovered it. But the rule that denies recovery in such instances does not rest on the ground that the assignee is not the representative of the creditors in such a way as to assert such rights as are vested in them, but rests on the ground that the creditors themselves, in such cases, could not assert the right.

While it may not argue very strongly in favor of the conclusion we have reached, it is well to remember, further, that the appellant is himself here suing in a representative capacity. He has, individually, no interest in the mortgage he seeks to enforce, nor in the debt thereby attempted to be secured. He sues in the capacity of a trustee, and all the rights he is attempting to assert are rights which inhere in his *cestuis que trustent.* If he may, in a representative capacity, assert for them the validity of the mortgage, seemingly the assignee may, in the same capacity, assert for others its invalidity.

The question presented is not altogether new in this state. In *Moore v. Terry,* 17 Wash. 185, 49 Pac. 234, it appears that the copartnership of Dodge & Smith, then operating a hotel, gave a chattel mortgage upon the hotel furniture to secure an indebtedness owing to one Terry, the mortgage containing a provision that it should cover all furniture that should thereafter be put into the hotel by the copartnership. Dodge later succeeded to the rights of Smith and operated the hotel on his own behalf. While so operating it, he put furniture therein belonging to himself individually. Later he became insolvent and made an assignment for the benefit of his creditors. The mortgagee made claim to furniture put into the hotel by Dodge, which claim

the assignee resisted. The trial court held in favor of the assignee, and on the appeal it was contended that the mortgage was valid as to the after-acquired property as between the mortgagee and Dodge, and was, therefore, valid as between the mortgagee and the assignee, since the assignee could acquire no greater rights in the property than Dodge had to assign. Answering the contention, the court used this language:

"The appellants contend that the assignee could have no greater rights than Dodge himself had in the premises, and that if a lien could be maintained as against Dodge, it must be held good in this instance; and authorities are cited upon the proposition that an assignee can have no greater rights than the insolvent had. But, under the holdings of this court, such a rule does not obtain here, for the assignee represented the creditors as well as the insolvent, and could assert such rights as the respective creditors could have asserted in case of a direct action. *Mansfield v. National Bank,* 5 Wash. 665, 32 Pac. 789, 999."

A similar principle was announced in the case of *Benner v. Scandinavian American Bank,* 73 Wash. 488, 131 Pac. 1149, Ann. Cas. 1914D 702. That was a case in which Benner, a trustee in bankruptcy, sought to recover from the bank certain property transferred by the bankrupt to the bank in violation of the bankruptcy act. Among other contentions, the bank urged that the trustee had no such interest as enabled him to maintain the action. Stating the contentions and the governing rule, this language was used:

"But it is said that the creditors here are not seeking to sequester the property to the satisfaction of their debts; that the title to the property is in the trustee in bankruptcy, who took it from the bankrupt, the vendor in the bill of sale; that the trustee's title is no better than the bankrupt's, and since it could not avoid the conveyance, the trustee cannot. But the trustee not only holds the legal title to the bankrupt's estate, but

he represents the creditors of the bankrupt also. Such rights as they possessed against the claimants and holders of the bankrupt's estate, he possesses; and he can avoid any transfer or conveyance of the property which they could have avoided. In other words, the bankruptcy proceedings are in themselves in effect an attachment and sequestration of the property of the bankrupt for the benefit of his creditors, and the trustee thereof has plenary power to take all such steps as are necessary to subject the bankrupt's property to the satisfaction of his obligations. Bankruptcy Act, § 67, c; *Mueller v. Nugent,* 184 U. S. 1; *Bank v. Sherman,* 101 U. S. 403; *Bryan v. Bernheimer,* 181 U. S. 188; *In re Pekin Plow Co.,* 112 Fed. 308; *In re Thorp,* 130 Fed. 371."

The appellant cites and relies upon the cases of *Malmo v. Washington Rendering & Fertilizing Co.,* 79 Wash. 534, 140 Pac. 569, L. R. A. 1917C 440, *Eilers Music House v. Ritner,* 88 Wash. 218, 152 Pac. 1008, 154 Pac. 787, and *Sunel v. Riggs,* 93 Wash. 314, 160 Pac. 950. In the first and second of these cases it was held that a conditional sales contract good as between the parties was good as to general creditors, that is, creditors who had not acquired a specific lien upon the property; and that the appointment of a receiver of the property of the debtor at the suit of the creditors was not such a sequestration of the debtor's property as to create such specific lien. The rule of these cases is seemingly contrary to the earlier cases of *Willamette Casket Co. v. Cross Undertaking Co.,* 12 Wash. 190, 40 Pac. 729, and *Manhattan Trust Co. v. Seattle Coal & Iron Co.,* 16 Wash. 499, 48 Pac. 333, 737, in the first of which it was pointed out that the appointment of a receiver placed the general creditors at a disadvantage, if it were to be held that the receiver was not so far their representative as to be able to question in their behalf liens void as to them, since the very appointment of the receiver placed it beyond their power to

acquire a specific lien. Indeed, the court went so far as to say that it did not think it would be seriously questioned that a mortgage inoperative as to creditors would not be operative as to the receiver as their representative. But giving effect to the rule of the later cases, we think they are distinguishable from the present case and the cases we have cited as supporting the present case. Here the general creditors acquired more than a lien by the assignment. They acquired ownership and title; equitable title it may be, but title nevertheless. Having title through their representative, it is unsound in principle to say that they cannot question liens' void as to them, and what is the same thing, question such liens through their representative. The fact that no immediate consideration passed from the assignee to the assignor, or the fact that the obligation which the assignment was intended to satisfy antedated the assignment, does not invalidate or subject the assignment to the lien of the mortgage. A purchaser of property in consideration of a preexisting debt is within the protection of the statutes. *Johnston v. Wood,* 19 Wash. 441, 53 Pac. 707.

The third case, while it is not questioned that it was rightly decided, we think was rested upon an untenable ground. The conditional sale in that case was perfected by recordation prior to the time the assignment was made, and was then valid under the authority of *Pacific Coast Biscuit Co. v. Perry,* 77 Wash. 352, 137 Pac. 483, since the creditors had not at that time acquired either title to the property or a specific lien thereon. But the majority of the court think it wrong to the extent that it was rested upon the ground that the assignee was not so far the representative of the creditors as to be able to question a conditional sales contract void as to general creditors.

It is worthy of mention, also, that the decisions in

these cases did not meet with general approval. The legislature of the state, since the decisions were announced (Laws of 1915, pp. 276, 277; Rem. Code, §§ 3670, 3660), has enacted statutes declaring all chattel mortgages and contracts of conditional sale void as to creditors, "whether or not they have or claim a lien upon such property," unless executed and recorded in a prescribed manner.

Our conclusion, therefore, is that the assignee can question the validity of the chattel mortgage in issue, as the representative of the general creditors of the assignors.

The further inquiry is, was the mortgage void as to creditors. The trial court held that it was, for two reasons: (1) it covered a general stock of merchandise of which the mortgagors were left in possession with power of disposition and sale in the usual course of trade, without any agreement, either oral or written, to apply the proceeds, or any part of the proceeds, derived from such disposition or sale to the satisfaction of the mortgage debt; and (2) the mortgage was not recorded within ten days after its execution, nor until after the assignment for the benefit of creditors had been made and the assigned property had been taken possession of by the assignee.

Our conclusion on the second of these propositions renders it unnecessary to discuss the first. It may be remarked in passing, however, that such mortgages were held void *per se* as to creditors by the territorial court in the cases of *Wineburgh v. Schaer*, 2 Wash. Terr. 328, 5 Pac. 299, and *Byrd v. Forbes*, 3 Wash. Terr. 318, 13 Pac. 715, and no case from the state court has been pointed out to us where a contrary doctrine has been announced. We have held such mortgages valid when accompanied by an agreement, either parol or written, that the proceeds derived from the conduct

of the business shall be applied to the satisfaction of the mortgage debt, or to the running expenses, the keeping up of the stock, and the satisfaction of the debt, and have held a mortgage valid where the agreement was that the mortgaged stock should not be reduced below a fixed value; but no case, as we say, holds that a mortgage is valid where the mortgagor is permitted to remain in possession of the property and dispose of it by sale in due course of trade with no obligation to account for such sales prior to the maturity of the mortgage debt. For the convenience of the curious, we cite the cases where the question has been touched upon: *Warren v. His Creditors,* 3 Wash. 48, 28 Pac. 257; *Ephraim v. Kelleher,* 4 Wash. 243, 29 Pac. 985, 18 L. R. A. 604; *Benham v. Ham,* 5 Wash. 128, 31 Pac. 459, 34 Am. St. 851; *Sanders v. Main,* 12 Wash. 665, 42 Pac. 122; *Adams v. Dempsey,* 22 Wash. 284, 60 Pac. 649, 79 Am. St. 933; *Van Winkle v. Mitchum,* 66 Wash. 296, 119 Pac. 748; *Nason & Co. v. Stack,* 81 Wash. 147, 142 Pac. 477.

We are clear that the mortgage is void for the second reason stated. The statute in force at the time the mortgage was executed (Rem. & Bal. Code, § 3660), provides that a mortgage of personal property is void as against creditors of the mortgagor, or subsequent purchasers and incumbrancers of the property for value and in good faith, unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, and without any design to hinder, delay, or defraud creditors, and is acknowledged and recorded in the same manner as is required by law in conveyances of real property. A subsequent statute (Rem. Code, § 3661) permits its recordation within ten days from the time of its execution, making the recording within that period a compliance with the requirement in the first section cited. By a reference to the statement of the case

we have made, it will be seen that the mortgage was not recorded within the time limited by the statute, nor until after the property had been assigned to the respondent and he had taken possession of the property. By the terms of the statute as construed by our decisions, the mortgage was void as to all creditors who are in a position to assert the invalidity of the mortgage by acquiring a specific lien upon the property. And since we hold that the assignment of the property for their benefit created such a lien, it follows as of course that the mortgage is void as to them. It would seem that the words of the statute were so clear as to scarcely admit of dispute or contrary opinion, but it has nevertheless been, as to its meaning, the subject of controversy before this court. In *Hinchman v. Point Defiance R. Co.,* 14 Wash. 349, 44 Pac. 867, one of the questions in contest was the priority of a subsequent properly executed mortgage over a defectively executed prior one good as between the parties. The court, after quoting the statute, used this language:

"Manifestly, there are three classes of persons whose rights are defined by this section. They are, (1) creditors of the mortgagor; (2) subsequent purchasers, and (3) parties in whose favor subsequent incumbrances of the property are made. As to the first class—creditors—the unrecorded mortgage is absolutely void. It is void, also, as to the two latter classes when they deal with the mortgaged property for value and in good faith."

In *Manhattan Trust Co. v. Seattle Coal & Iron Co.,* 16 Wash. 499, 48 Pac. 333, 734, the question was as to the validity of a mortgage upon personal property executed and recorded in the form of a mortgage upon real property. The court held the mortgage void as to creditors because not executed in manner prescribed by the statute nor recorded so as to give constructive

notice. In the course of the opinion, this language was used:

"There was no affidavit of the mortgagor that any mortgage of personal property was made in good faith and without any design to hinder, delay and defraud creditors, and it was not recorded as a chattel mortgage. Section 1648, Gen. Stat. (1 Hill's Code), is as follows:

" 'A mortgage of personal property is void as against creditors of the mortgagor or subsequent purchasers, and incumbrancers of the property for value and in good faith, unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, and without any design to hinder, delay or defraud creditors, and it is acknowledged and recorded in the same manner as is required by law in conveyance of real property.'

"Section 1649 provides:

" 'A mortgage of personal property must be recorded in the office of the county auditor of the county in which the mortgaged property is situated, in a book kept exclusively for that purpose.'

"The plain, literal meaning of these sections is against the contention of plaintiff that it has any lien whatever upon the personal property in the possession of the receiver as against these petitioners. There is no evidence whatever that the petitioners had any notice of the existence of any chattel mortgage in favor of the plaintiff. Counsel for plaintiff and receiver argued that, as petitioners, as creditors, have not negatived notice or knowledge on their part, it should be inferred against them; but this would be a novel rule and one that we have never seen applied. Such allegation and proof of notice should come from the one claiming the personal property under the alleged mortgage. But we are not prepared to decide that in any view there could be here a chattel mortgage as against these creditors."

In the more recent case of *Smith v. Allen*, 78 Wash. 135, 138 Pac. 683, Ann. Cas. 1915D 300, it was held that a chattel mortgage without any certificate of acknowl-

edgment is void as against creditors or incumbrancers for value and in good faith, under the express provisions of this statute. It was held also that a creditor who takes a valid chattel mortgage to secure his antecedent debt is both a creditor and incumbrancer, and that his mortgage is superior to a prior defectively executed mortgage, notwithstanding he may have had knowledge of the prior mortgage.

But the inquiry need not be pursued. It is our conclusion that there is no error in the judgment sought to be reviewed. It will stand affirmed.

ELLIS, C. J., MOUNT, MAIN, HOLCOMB, PARKER, WEBSTER, and CHADWICK, JJ., concur.