## FIRST NAT. BANK OF GREENVILLE v. FIRST STATE BANK OF CAMPBELL. (No. 8847.)

(Court of Civil Appeals of Texas. Dallas. June 2, 1923.)

**1. Chattel mortgages ☞48—Description of crops held sufficient.**

Description in a chattel mortgage, including "all crops for 1921," held, as respects mortgagor's cotton crop, sufficiently definite when so treated by the parties.

**2. Chattel mortgages ☞47—Property may be identified by parol.**

An indefinite description of property in a chattel mortgage may be shown by parol to be intended to apply to specific property.

**3. Banks and banking ☞134(5)—Chattel mortgages ☞219—Where mortgaged crop delivered to mortgagee, mortgagee's redelivery thereof to mortgagor to sell held not to impair mortgagee's title; bank could not set off money belonging to third party.**

Where mortgagor actually delivered to mortgagee bank the cotton yard tickets representing the cotton crop covered by the mortgage, the redelivery of the tickets to the mortgagor as bailee to make sale and apply the proceeds upon his note, did not impair the bank's title to the property or its proceeds; and another bank in which the proceeds of such sale were deposited by the mortgagor in his own name had no right to apply such funds to the mortgagor's debt to it.

**4. Trial ☞139(1) — Peremptory instruction proper, where contrary verdict could not stand.**

Where, if verdict had been returned for defendant it could not have been permitted to stand, in view of the evidence, peremptory instruction for plaintiff was proper.

Appeal from Hunt County Court; Olin F. McWhirter, Judge.

Action by the First State Bank of Campbell against the First National Bank of Green-

ville. Judgment for plaintiff, and defendant appeals. Affirmed.

Neyland & Neyland, of Greenville, for appellant.

Clark & Sweeton, of Greenville, for appellee.

HAMILTON, J. We make the following finding of facts: On or about December 14, 1921, J. M. Gilbreath was indebted to appellee in the sum of $1,435. The indebtedness was evidenced by a promissory note then past due. Gilbreath had executed to appellee a chattel mortgage to secure the indebtedness, mortgaging certain live stock and farming implements and "all crops for 1921." Gilbreath who was a farmer in Hunt county, Tex., during the year 1921 produced 11 bales of cotton, which were put in the cotton yard at Campbell, Hunt county, Tex., and the cotton yard tickets were delivered to appellee. The mortgage contained no description of crops beyond that above quoted, but the proof shows without any contradiction that the mortgage was intended, both by Gilbreath and the appellee bank, as a mortgage on all crops raised by Gilbreath upon his premises in Hunt county. Mutually between them the mortgage was recognized and treated as a valid one. The delivery of the cotton yard tickets was made to the Campbell bank by Gilbreath as symbolical delivery of the cotton to appellee to be sold for the purpose of applying the proceeds upon the debt.

About December 12, 1921, it was decided and agreed between the bank and Gilbreath that the cotton should be sold and the money obtained for it applied upon the note. The appellee bank suggested to Gilbreath that if he himself would haul the cotton to Greenville and sell it there, where a better market than that at Campbell existed, he could thereby "make wages" by obtaining the benefits of making delivery and sale in Greenville. It having been understood between Gilbreath and a representative of the bank that on December 13 he should load the cotton on his wagons and transport it to Greenville and sell it, the tickets were delivered to Gilbreath by the bank for the purpose of making sale of the cotton in Greenville and turning over to appellee the proceeds of the sale to be credited on the debt. The cotton tickets were delivered to Gilbreath solely for this purpose, and he made the sale on the 13th day of December, 1921, depositing the check he received for the cotton in the First National Bank of Greenville. At the time the deposit was made Gilbreath was indebted to the First National Bank of Greenville upon a promissory note for $854, which was also past due. Gilbreath was not a customer of the First National Bank of Greenville, and his only reason for depositing the money in that bank was that he might leave it there to be checked

out to appellee bank the next day. At the time the deposit was made, Gilbreath, according to his testimony, informed the First National Bank that the money being deposited belonged to the Campbell State Bank, although the deposit was made in Gilbreath's name; the check having been made to him by the purchaser.

He returned to Campbell and, on the morning of December 14, 1921, went to the First State Bank of Campbell, exhibited the deposit slip given him by the First National Bank of Greenville, and executed to appellee a check for the amount of the deposit. Appellant declined to honor the check, claiming that the deposit made by Gilbreath had been applied and credited upon the note held by appellant against Gilbreath. The note held by appellant was not marked paid nor delivered to Gilbreath, but remained in the possession of appellant. Its cashier denied that Gilbreath told him the money belonged to the First State Bank of Campbell, but testified that he told Gilbreath he could check the money out at Campbell.

The case was tried before the court and a jury and, at the conclusion of the evidence, the jury was directed by a peremptory instruction to return a verdict for appellee for the full amount of the proceeds of the sale.

## Opinion.

[1, 2] We do not think the chattel mortgage was void as between the parties because of indefiniteness and insufficiency of the description, under the facts and circumstances and the mutual understanding and attitude of Gilbreath and the Campbell bank towards it. However insufficient the description standing alone may be said to be, the parties treated it as valid and applying to the specific property in question. Edwards v. Mays (Tex. Civ. App.) 136 S. W. 510. They considered and recognized it as a binding mortgage upon the particular property from which the money deposited in the bank was realized. There is no dispute that it was intended at the time the mortgage was given that it should apply to this specific property and by parol as between the parties the description was made definite. This is permissible. Clark & Boice Lbr. Co. v. Bank (Tex. Civ. App.) 200 S. W. 197.

[3] But, excluding from consideration the mortgage, the evidence seems to us conclusively to establish a delivery of the cotton to the bank with an intention that title should pass. The mortgagee testified that he con-

sidered the cotton belonged to the bank because it was not worth enough to pay the debt. Delivery was actually made by the mortgagee at the time the tickets were delivered, with the intention of passing title to appellee bank. The tickets were not returned to Gilbreath for the purpose of reinvesting him with title to the property, but were delivered to him only as bailee, for the purpose of his making sale and specific application of the funds upon his note. Gilbreath, under the undisputed facts, merely acted as the Campbell bank's special agent in making the sale. This act and transaction did not impair the Campbell bank's title to the property. Crow v. Bank, 52 Tex. 362; Kellogg v. Tompson, 142 Mass. 76, 6 N. E. 860; Benham v. Ham, 5 Wash. 128, 31 Pac. 459, 34 Am. St. Rep. 851.

Even if it be conceded that Gilbreath did not represent to the appellant bank at the time the deposit was made that the money belonged to the Campbell State Bank, we are of the opinion that, nevertheless, appellant could not apply the proceeds of the sale to the extinguishment of Gilbreath's debt to it under the circumstances which existed at the time. The undisputed facts reveal clearly a transaction between the appellee bank and Gilbreath which resulted in the acquisition of the title to the property by the bank and the delivery of it by the bank to Gilbreath, under bailment or special agency to take it to Greenville, make sale, and deliver the funds to the appellee bank. The appellant bank suffered no loss by the transaction. Its position was in no way changed or prejudiced. To require payment of the funds to the Campbell State Bank leaves the appellant bank in precisely the same situation where it stood at the time the deposit was made in relation to Gilbreath's indebtedness to it. Under these circumstances the contention is untenable that a bank can offset an indebtedness to it with money belonging to a third party, merely because such party permits the debtor, acting as his agent, to make a deposit in the debtor's name rather that in the name of such third party who is the actual owner of the funds.

[4] If the case had been submitted to the jury and a verdict had been returned for appellant, such verdict could not be permitted to stand in the light of the proof. Accordingly, in these circumstances, the trial court did not err in giving a peremptory instruction, and the judgment is affirmed.

Affirmed.