[No. 15265.   Department Two.   July 14, 1919.]

# R. D. SIMPSON, *as Trustee etc., et al., Respondents,* v. EUGENE T. COMBES *et al., Appellants.*[1]

BANKRUPTCY (18)—ACTIONS BY TRUSTEE—RIGHT TO SUE. A trustee in bankruptcy may maintain an action to set aside a foreclosure and sale of the bankrupt's property, made prior to the filing of petition in bankruptcy, where the same was in fraud of the bankrupt's creditors, although the bankrupt did not oppose the sale.

CHATTEL MORTGAGES (48-3, 49)—POSSESSION OF PROPERTY AND DISPOSITION OF PROCEEDS. A mortgage of a stock of goods is valid, although it leaves the mortgagor in possession with power to sell in the course of trade under an agreement to apply a portion of receipts to a discharge of the mortgage indebtedness.

BANKRUPTCY (7) — FRAUDULENT TRANSFERS — EVIDENCE — SUFFICIENCY. The evidence does not sustain findings of conspiracy and fraud by ·chattel mortgagees to the detriment of the bankrupt mortgagor's creditors, where it merely appears that they did not enforce payment according to the terms of the mortgage, and extended the time of maturity.

CHATTEL MORTGAGES (69, 72)—PAYMENT—DEFENSES—BURDEN OF PROOF. A chattel mortgage on a stock of goods having provided that monthly payments should be applied to the discharge of the mortgage indebtedness, the burden of proof of an oral agreement that the same might be applied on rent due from the mortgagor to the mortgagee is upon the mortgagee.

SAME (69, 72) — PAYMENT — APPLICATION — RIGHTS OF PARTIES. A chattel mortgage on a stock of goods having provided that monthly payments should be applied to the discharge of the mortgage indebtedness, and there being no oral agreement that they be applied on rent due from the mortgagor to the mortgagee, the mortgagee had no right to so apply them.

BANKRUPTCY (6, 7)—FRAUDULENT TRANSFERS—RIGHTS OF TRUSTEE. Where payments made were sufficient to discharge the bankrupt's chattel mortgage, a foreclosure sale thereunder is unlawful and void as to the trustee in bankruptcy and creditors of the mortgagor.

SAME (7, 18)—ACTIONS BY TRUSTEE—JUDGMENT—SURPLUS. Chattel mortgagees having unlawfully foreclosed the mortgage and disposed of the property of the bankrupt mortgagor, cannot object to judgment in favor of the trustee in bankruptcy for the value of the

[1]Reported in 182 Pac. 566.

property, on the ground that it exceeds the amount necessary to pay all claims, where the judgment provides that any surplus left after discharge of all obligations should be paid over to them.

Appeal from a judgment of the superior court for Pacific county, Hewen, J., entered September 11, 1918, upon findings in favor of the plaintiff, in an action to set aside a chattel mortgage and sale as in fraud of creditors of a bankrupt, tried to the court. Affirmed.

*John I. O'Phelan* and *Fred M. Bond*, for appellants.

*Harold B. Swasey* and *Geo. T. Swasey*, for respondent.

BRIDGES, J. — On April 28, 1914, the appellants, Eugene T. Combes and his wife, were the owners of a stock of general merchandise located in the city of Raymond, Washington. They were also the owners of the building in which this store was conducted. On that date they sold this stock of goods and certain fixtures to one C. B. Bagnall, whom we shall hereafter designate as the mortgagor, for the consideration of $10,228. All of the purchase price was paid at the time of the sale except $6,128. On the same date, Bagnall gave to the appellants a chattel mortgage covering the stock of goods and fixtures which he had purchased, for the purpose of securing the payment of the balance of the purchase price. This mortgage provided, among other things, that the indebtedness should become due on the 28th day of July, 1915; that all subsequent purchases becoming part of the merchandise of the store should be covered by the mortgage, and that the mortgagor was to remain in possession and run the store in the usual course of business. The mortgage further provided that the mortgagor "will honestly and accurately account to the first party (the mortgagee) for all sales made of said

merchandise, and pay and deliver to said first party each and every Monday hereafter a sum of money equal to two-thirds of the gross receipts during the preceding week,'' until the mortgage indebtedness and interest should be fully paid. These payments, as made, were to be credited on the mortgage indebtedness.

At the time of the execution and delivery of the mortgage, and as a part of the same transaction, the appellants made to the mortgagor a lease of the property in which the store business was to be carried on; this lease was to run for a period of years, and provided for a monthly rental of $65, payable in advance.

Thereafter the mortgagor continued to run the store, bought and sold goods, and contracted various bills of indebtedness. From time to time until the foreclosure of the mortgage, as hereinafter stated, the mortgagor paid to the appellants, either by check or cash, sums of money which were part, but not all, of the two-thirds of the gross receipts provided for in the mortgage. The appellants, upon receiving these payments, applied them first to the payment of the interest on the mortgage indebtedness, then to the payment of any rent which might be due, and any balance was applied on the principal of the mortgage indebtedness. Thereafter, during the month of February, 1917, the appellants claiming that there was still due on the mortgage indebtedness a considerable sum of money, and after demanding the payment thereof, foreclosed their mortgage by notice and sale as provided by statute. At the sheriff's sale the appellants were the purchasers of all of the stock of goods covered by the mortgage, and at once took possession and shortly thereafter disposed of all the property purchased. The mortgagor and his attorney

knew of the foreclosure proceedings and were present at the sale. They did not undertake to carry the proceedings into the superior court, nor in any way contest the same, nor did they raise any objection to the foreclosure and sale.

Shortly thereafter the mortgagor filed a petition in bankruptcy, and some time after that he was duly adjudged a bankrupt. The plaintiff in this case was the duly appointed trustee in bankruptcy and had charge of the bankrupt's estate. The estate was found to have practically no assets.

The trustee brought this suit for the purpose of setting aside the foreclosure and sale and to recover the property involved or the value thereof. The grounds of this suit were, among others, that the mortgage was void on its face, that there had been active fraud and conspiracy between the mortgagor and mortgagees adverse to the interest of the trustee and the mortgagor's creditors, and that the mortgage indebtedness had been fully paid before the foreclosure and sale. The case was tried by the court without a jury, and a money judgment was rendered against the appellants in the sum of $3,500. This appeal is from that judgment.

There are a great many assignments of error, but they will fall under four or five heads and will be so discussed.

I. It is contended by the appellants that the trustee in bankruptcy had no authority to institute and maintain this suit because, at the time of the filing of the petition in bankruptcy and the appointment of the trustee, the mortgage had been foreclosed, the sale made, and the mortgagor had lost all interest in the property. This contention cannot be sustained. If the trustee represented only the interest of the mortgagor or bankrupt and the latter be considered as

estopped by his conduct and actions, then the contention of the appellants might be good; but it must be remembered that the trustee represented the bankrupt's estate, including all of the interest of his creditors. This was, in substance, a suit to recover property wrongfully or fraudulently disposed of, and it has always been held that a trustee in bankruptcy, or a receiver in insolvency, may at any time maintain such an action. To sustain the contention of the appellants in this regard would be to hold that a trustee in bankruptcy could not maintain a suit to recover property which had been fraudulently disposed of in violation of the rights of creditors. It would seem that an extended argument need not be made to show that this position is untenable.

II. It is contended by the respondent, but we believe, without much earnestness, that the mortgage is void on its face. We cannot so hold. This mortgage was duly executed and filed with the county auditor as provided by law. Mortgages of this character have been upheld by this court in many decisions, running over a period of more than twenty years. *Ephraim v. Kelleher,* 4 Wash. 243, 29 Pac. 985, 18 L. R. A. 604; *Van Winkle v. Mitchum,* 66 Wash. 296, 119 Pac. 748; *Nason & Co. v. Stack,* 81 Wash. 147, 142 Pac. 477; *Keyes v. Sabin,* 101 Wash. 618, 172 Pac. 835. It is unnecessary to cite more of the decisions of this court on the question.

III. The respondent has contended that the testimony shows a conspiracy on the part of the mortgagor and mortgagees to defeat the rights of the creditors, and that the conduct of the mortgagee himself was such as to be in violation of the rights of the creditors and active fraud against him.

The trial court seems to have made a finding upholding this contention. We have very carefully read

the testimony and confess that we are wholly unable to find anything in the record which would even tend to show any conspiracy or any active fraud on the part of the mortgagees. It is true that appellants did not receive the whole of the two-thirds of the receipts from sales as provided in the mortgage, and it may be that they knew they were not receiving the whole of this money, but it is plain from the testimony that the mortgagor was paying them from time to time all he could pay and all that the business would justify. The appellants, from time to time, insisted that the mortgagor should pay them larger and additional sums. There is nothing we can find in the record to show that there was any agreement between the mortgagor and mortgagees that less payments should be made than those provided for in the mortgage.

It is also true that the mortgagees did not undertake to foreclose their mortgage when it became due, but allowed the mortgagor to continue the operation of the store for sometime thereafter; but there is nothing in the testimony to indicate that by this action there was any intention to injure the mortgagor's creditors. On the contrary, it would appear that the action of the mortgagees in this regard would be to the benefit of the creditors rather than to their detriment.

The business seems to have been carried on in the usual course and as men are in the habit of dealing under like circumstances. We think, therefore, that the trial court was in error in finding actual or active fraud or any conspiracy against the rights of the trustee or the creditors; but, as we shall later see, this erroneous finding becomes immaterial.

IV. The respondent has at all times contended that, at the time of the foreclosure and sale, the whole of the mortgage indebtedness had been paid, and that

for this reason the foreclosure and sale were wrong-fully made and in violation of the rights of the trustee and the creditors of the bankrupt.

It is hardly necessary to do more than to state the general rule that the debtor, upon making payments to his creditor, may designate the application of those payments, and that if he fails to so designate, the creditor may apply the payments as he may see fit. There are some exceptions to this general rule, but we are not interested in them in this case.

We have before stated that some $2,000 of the money paid by the mortgagor to the appellants was applied by the latter towards the payment of the rent under the lease. If these payments had all been applied to the discharge of the mortgage indebtedness, then, at the time of the foreclosure and sale, the whole of that indebtedness would have been paid. The important question, therefore, arises as to whether or not the appellants had the right to apply any of the payments made by the mortgagor to the discharge of the rental indebtedness. The appellant Combes testified that, at the time of the making of the mortgage, there was an oral understanding that he might apply payments to the discharge of the rent, and that subsequently and at various times there were like agreements and understandings between the parties to the mortgage. On the other hand, the mortgagor stoutly denies that there ever was any such oral agreement or that he ever authorized the mortgagees to apply the payments towards the rental indebtedness, and that there never was any agreement with reference to the application of the money paid other than that contained in the mortgage itself. The trial court made a finding to the effect that no oral agreement had ever been made concerning the application of these funds. We have very carefully read the testi-

mony and, while the same is in great conflict, we are disposed to adopt the finding of the trial court. He had the witnesses before him and was probably in a better position to reconcile this contradictory evidence than we.

The appellants contend, however, that, inasmuch as the mortgagor did not put in his petition in bankruptcy any item showing the indebtedness for rent, the court, on this account, should find that there was an oral agreement for the application of the funds. It does not appear to us that this argument can have very much weight. The testimony shows that the mortgagor's books did not contain any item of indebtedness on account of rent. These petitions in bankruptcy are generally made out by some third person or an attorney for the bankrupt, and the failure to show in the bankruptcy petition the rental indebtedness would have very little meaning. But it is further contended that the mortgagor and his attorney were present at the foreclosure sale and did not then raise any objections or contend that there was nothing owing on the secured indebtedness. The mortgagor, however, satisfactorily explains this by testifying that, at the time of the sale, he had not figured up accurately the amount he owed appellant, and while he felt quite certain he owed nothing, or very little, on the mortgage indebtedness, yet he did know that he owed him a large sum on account of rent, and that, in any event, he was bankrupt and did not have any money to protect his rights or contest the sale.

The mortgage itself having provided that these payments should be applied to the discharge of the mortgage indebtedness, the burden of proving any oral agreement to the contrary would rest upon the appellants, and they have failed to sustain the burden. The

testimony amply justifies the finding of the lower court with reference to this matter.

This being the condition, the result is that the only agreement concerning the application of the funds is that contained in the mortgage itself, to the effect that such payments should be made on, and be applied to, the payment of the mortgage indebtedness, and it was therefore the duty of the appellants to have so applied the payments. If they had so done, there would not have been any money owing on that indebtedness at the time of the foreclosure sale. The result necessarily is that the sale was unlawful and void and in violation of the rights of the trustee and the creditors whom he represents.

The respondent has contended here that, even though there had been an agreement between the parties to the mortgage that the money to be paid might be applied in part to the payment of the rent, such agreement would be void and in violation of the rights of the creditors, because of the provision in the mortgage that such sums should go toward the discharge of the mortgage indebtedness. On the contrary, the appellants contend that, inasmuch as the payment of the rent was a part of the operating expenses of the business, the parties had the right to agree that part of the payments provided by the mortgage to be made might be diverted to the payment of that rent. Having come to the conclusion that the sale was void for other reasons, we find it unnecessary to decide this very interesting question.

V. The appellants further assert that the judgment should be reversed because the claims presented to the trustees aggregate in the neighborhood of $1,500, and that the year provided by the Federal bankruptcy act for the presentation of claims had expired, and that

the judgment, if any, against the appellants should have been only for an amount sufficient to pay the claims so presented. It must be remembered, however, that many unexpected contingencies may arise in these bankruptcy matters which would incur additional expense. It was, of course, impossible at the time of the trial for the trustee to have shown, with any accuracy, the expenses the bankrupt's estate would be put to. It was impossible for him at that time to know what litigation there might be, what necessity for the payment of costs and expenses and attorney's fees; it was impossible for him to know at that time that he would be required to follow this case to this court at very considerable expense. It may turn out that the amount of the judgment will not be more than enough to pay the claims and the expense of administering the estate. In any event, the appellants, having unlawfully foreclosed the mortgage and disposed of the property so that it cannot be turned over to the trustees, cannot now be heard to complain that they are required to pay to the trustee the value of the property. They cannot thus take advantage of their own wrong. Besides this, the trial court's judgment fully protects them by providing that if there is any surplus left after the trustee had discharged the obligations of the bankrupt's estate, such surplus should be paid over to them.

The appellants further contend that the evidence fails to show that the property involved was of the value of $3,500, being the amount of the judgment against them. We are not disposed to interfere with the findings of the trial court in this regard. We think the testimony amply sufficient to have justified the lower court in finding the value to be that sum.

There are one or two other minor questions briefly

argued by the appellants, but in which we find no merit.

Judgment affirmed.

HOLCOMB, C. J., PARKER, MOUNT, and FULLERTON, JJ., concur.