[No. 28258. Department Two. April 7, 1941.]

*In the Matter of the Dissolution of* CASCADE FIXTURE COMPANY.

SEATTLE ASSOCIATION OF CREDIT MEN, *Appellant,* v. JAY BOERSEMA *et al., Respondents.*[1]

[1]Reported in 111 P. (2d) 991.

264

*Croson, Johnson & Wheelon,* for appellant.

*Philip Tindall* and *Donald L. Gaines,* for respondents Boersema *et al.*

*The Attorney General* and *Geo. G. Hannan,* for respondent state of Washington.

SIMPSON, J.—This appeal involves the priority of claims filed with the receiver of Cascade Fixture Co., an insolvent corporation.

Cascade Fixture Co. was in the business of manufacturing and selling certain articles of merchandise. Prior to March, 1938, the fixture company experienced financial difficulties in the conduct of its business and owed debts to approximately one hundred and fifteen creditors. On the fourth day of that month it gave to the Seattle Association of Credit Men, a corporation, as trustee for the creditors, a chattel mortgage upon its assets in the sum of sixteen thousand dollars. Thereafter, the fixture company continued to do business in its accustomed manner for about one and one-half years, at the end of which time a receiver was appointed to liquidate its affairs as part of dissolution proceedings. The property was sold by order of the court, and the amounts received at the sale were paid into court to be applied upon various claims filed with the receiver. The amount realized from a sale of the assets was $4,775, of which twelve hundred dollars was received from the sale of merchandise. In addition, $216.41 was realized by the receiver from accounts receivable.

Among the claims filed and allowed were those of King county for personal taxes in the sum of $625.68; the United States for taxes, $610.82; the state of Washington for sales, business, and occupational taxes, $428.94; the state of Washington for industrial insurance taxes, $38.25; the state of Washington for unemployment compensation taxes, $509.71, making a total of tax claims filed in the sum of $2,213.40.

A landlord's lien was filed for three hundred dollars, the Seattle Association of Credit Men filed a claim for the $11,781.45 still due upon its mortgage, and the claims of various workmen, employed by the fixture

company for work performed subsequent to the filing of the mortgage, were also filed.

After the claims were filed with the receiver, the court proceeded to determine their priorities. It decided that the claims should have priority as follows: King county for taxes, the United States for taxes, the state for sales, business, and occupational taxes, industrial insurance tax, labor and landlord's liens, the state for unemployment compensation tax, and the claim of the Seattle Association of Credit Men. After the entry of an order allowing the claims as just indicated, the Seattle Association of Credit Men appealed.

The assignments of error call in question the correctness of the order made by the trial court holding that the labor claims and the claim of the state for unemployment compensation taxes were superior to that of appellant.

The labor liens were claimed under the provisions of Rem. Rev. Stat., § 1149 [P. C. § 9737], which gives laborers in factories the right to assert liens for their wages earned within six months prior to the time of filing.

This court passed upon that statute in *Fitch v. Applegate*, 24 Wash. 25, 64 Pac. 147. We held that laborers' liens for work performed after the filing of a mortgage upon the property in question were not liens which had a priority over that of the properly filed mortgage. That case was cited in *Rothweiler v. Winton Motor Car Co.*, 92 Wash. 215, 158 Pac. 737, to show that "the legislature had no thought of destroying prior liens of an independent character."

In *Cashmere Valley Bank v. Pacific Fruit & Produce Co.*, 198 Wash. 363, 88 P. (2d) 579, this court again expressed its view relative to the lien of the chattel mortgage, and in the course of the opinion stated:

"Any question as to the priority of a chattel mortgage, properly executed and properly and timely filed as the statute prescribes, over subsequently asserted liens, is foreclosed in this state."

This holding was reaffirmed in *Loudon v. Cooper*, 3 Wn. (2d) 229, 100 P. (2d) 42. Under the authority cited, it is obvious that the lien of a chattel mortgage, properly executed and filed in accordance with the statutes, is a lien superior to labor liens arising thereafter.

Respondents assert, however, that the purpose for which the mortgage was given, namely, that of securing the creditors which the mortgagor had at that time, and the language employed in the mortgage, made it, in effect, an assignment for the benefit of creditors. We cannot so hold.

While it is true that the mortgagor was insolvent when it made the mortgage and there was a provision that the mortgagee could, at its option, take possession of and manage the mortgaged property, we are convinced, from a reading of the general language of the mortgage instrument and from an examination of the activities of the parties, that the transaction actually was a mortgage transaction, rather than an assignment for the benefit of creditors. The intention of the parties is of compelling importance in ascertaining the true nature of these transactions, and where, as here, it is clear that it was not intended that an absolute transfer of the debtor's property be made to the creditors, but that the debtor should continue in business under a security arrangement with the creditors, we cannot hold that the transaction was other than that which it purported to be. 6 C. J. S. 1223, § 4(g), and cases therein cited.

Respondents next contend that the mortgage was invalid as to the stock of goods, due to the fact that the

proceeds of the shifting stock of goods were not applied to reduce the mortgage debt.

■ The mortgage provided that the mortgagor should pay the net balance of the proceeds of the sale of merchandise to the mortgagee, and that an accounting should be had on the 15th day of each month during the life of the mortgage, with a minimum of two hundred and fifty dollars per month to be paid by the mortgagor toward the reduction of the debt.

Although the amount by which the indebtedness was reduced falls short of the amount which would be reached had the two hundred and fifty dollar minimum amount been paid each month, the evidence is silent on the question, and there is no showing that there was a failure to pay over to the mortgagee all net amounts which were realized from the sale of merchandise. We have on several occasions upheld as valid mortgages of the type here involved, provided there is a provision for an application of the proceeds of the sale of the merchandise to the mortgage debt and for regular accountings. *Benham v. Ham,* 5 Wash. 128, 31 Pac. 459, 34 Am. St. 851; *Miller v. Scarbrough,* 108 Wash. 646, 185 Pac. 625; *State Bank of Connell v. John Deere Plow* Co., 123 Wash. 167, 212 Pac. 148; *General Mercantile Co. v. Waters,* 127 Wash. 481, 221 Pac. 299; *Spokane Merchants Ass'n v. Mussellman,* 134 Wash. 116, 234 Pac. 1033; *Tahoma Finance Co. v. Shannon,* 138 Wash. 90, 244 Pac. 271.

There was nothing shown in the record before us which would render the mortgage invalid, the mere failure to actually reduce the mortgage to the agreed level not being enough, *per se,* to afford us a basis for finding that the transaction was void as being in fraud of creditors. *Simpson v. Combes,* 107 Wash. 575, 182 Pac. 566.

█ Respondents also urge that the mortgage, by its terms, puts labor liens ahead of the mortgage lien.

The mortgage required the mortgagor to insure the mortgaged property against loss by fire, and to pay

" . . . all taxes and claims, or charges for rent or labor, which could become a lien against said property and take precedence over this mortgage."

Respondents contend that, even though the rule set forth by this court has been that prior mortgages, properly filed, are superior to labor liens, the parties here, by the language quoted, showed that they intended that the labor liens should enjoy priority over the mortgage lien. We cannot so construe the language in question. The case of *Cashmere Valley Bank v. Pacific Fruit & Produce Co., supra,* involved the respective priorities of a previously filed chattel mortgage and of common law liens for material furnished and services performed. It should be noted that the mortgagor incurred the later liens pursuant to a covenant in the mortgage, which required that he secure the material and services in question, but we still held that the mortgage lien enjoyed priority.

In the case at bar, even though the mortgagor may have covenanted to pay the insurance, rent, and labor charges, such charges were not thereby elevated to a position superior to that of the mortgage. The clause "which could become a lien against said property and take precedence over this mortgage" adds nothing to the strength of the covenant, from the standpoint of priorities, and we do not regard it as having been intended to constitute a realignment of priorities. We are of the opinion that it was only intended to be a protective measure to require the mortgagor to pay all such bills which might give rise to valid liens, and was not intended as a submission to the priority of those particular types of liens.

■ The state of Washington maintains that the trial court was correct in holding its lien for unemployment compensation superior to that of the chattel mortgage. Provisions of the statute relating to the status of unemployment compensation claims are found in chapter 162, § 14 (c), Laws of 1937, p. 604, as amended by chapter 214, § 12 (c), Laws of 1939, p. 849, Rem. Rev. Stat. (Sup.), § 9998-114 (c) [P. C. § 6233-309 (c)]. Appellant contends that the relative priorities of the mortgage and of the department's claim are governed by the statute which was in effect at the time the mortgage was executed, namely, the 1937 act, and that, under the provisions of that act, the department's claim would not be prior to the mortgage lien.

The 1937 act did not constitute the amounts due to the department a lien upon the property of the delinquent, but simply designated such amounts as prior claims. Such a designation is not enough to bestow priority over preexisting liens, inasmuch as express legislative action is necessary in order to accomplish that result.

"Assuming that the legislature may establish a state tax as a prior lien, such a legislative intent must clearly appear." *Home Owners' Loan Corp. v. Mitchell,* 195 Wash. 302, 81 P. (2d) 268.

■■ As for the 1939 amendment, its language does provide that, in dissolution proceedings, the amounts due to the department of unemployment compensation shall be a lien, prior to all other liens, with certain exceptions. However, in order to apply that provision to the case at bar, it would be necessary to construe the language of the amendment as having a retroactive effect, due to the fact that the mortgage antedated the enactment of the amendment. To so construe the language of the 1939 amendment would present us with the problem of determining whether or

not such an act is valid, in view of the fact that it would interfere with preexisting rights. However, we do not feel called upon to determine this question, in view of the fact that we cannot construe the language of the 1939 amendment as being intended to create a retrospective priority. The section, Rem. Rev. Stat. (Sup.), § 9998-114 (c), reads:

"In the event of any distribution of an employer's assets pursuant to an order of any court under the laws of this state, including any receivership, probate, legal dissolution, or similar proceeding, or in case of any assignment for the benefit of creditors, composition, or similar proceeding, contributions then or thereafter due shall be a lien upon all the assets of such employer. Said lien will be prior to all other liens or claims except taxes and claims for remuneration for services of not more than $250 to each claimant, earned within six months of the commencement of the proceeding. . . ."

The general rule of statutory construction followed by this and other courts is that legislative enactments will not be construed retroactively or retrospectively unless the intent that they be so construed is clearly shown by the language of the act, either expressly or as a matter of necessary implication. *Heilig v. Puyallup City Council,* 7 Wash. 29, 34 Pac. 164; *Teed v. Brotherhood of American Yeomen,* 111 Wash. 367, 190 Pac. 1005.

This same rule, of course, is applicable to statutes relative to tax lien priorities.

"Statutes making tax liens paramount, in the absence of apt words expressing such intention, will not be construed retrospectively." 61 C. J. 927, § 1178.

We believe that the following quotations are expressive of the attitude of the authorities relative to this subject:

"Retrospective or retroactive legislation is not favored. Hence, it is a well-settled and fundamental rule

of statutory construction, variously stated, that all statutes are to be construed as having only a prospective operation, and not as operating retrospectively. It is equally well settled as a fundamental rule of statutory construction supported and established by numerous judicial decisions that statutes are not to be construed as having a retroactive effect. Both the above statements and rules are of course contingent upon the absence of any words expressing a contrary intention, or, more specifically, unless the purpose and intention of the legislature to give them a retrospective effect clearly, expressly, plainly, obviously, unequivocably, and unmistakably appears, . . . In every case of doubt, the doubt must be solved against the retrospective effect and in favor of prospective construction only." 59 C. J. 1159, § 692.

"Retroactive legislation changing rights is not favored, and the rule that statutes are not to be construed retrospectively unless such construction was plainly intended by the legislature applies with peculiar force. Hence, in so far as affecting vested rights, a statute will be construed as prospective only, and not as operating retrospectively or retroactively, unless that intention is made manifest either by express words or by a clear, distinct, necessary, plain, strong, unmistakable, implication. A statute therefore is not to be construed to impair the validity of contracts entered into before its passage. It is only where the intent of the legislature to make an act retrospective is plainly expressed that courts will undertake to apply it to antecedent contracts and determine whether it impairs their validity." 59 C. J. 1171, § 696.

"Even though the legislature may have the power to enact retrospective laws, a construction which gives to a statute a retroactive operation is not favored, and such effect will not be given unless it is distinctly expressed or clearly and necessarily implied that the statute is to have a retroactive effect. . . . Especially will a statute be regarded as operating prospectively when it is in derogation of a common law right, or the effect of giving it retroactive operation will be to destroy a vested right." 25 R. C. L. 787, § 35.

In view of the statutory rule of construction enunciated, the language of the 1939 amendment cannot be regarded as creating a retroactive paramount lien in favor of the department, since there is nothing in that language which either expressly, or by necessary implication, shows that such an effect was intended.

The judgment is reversed with instructions to the trial court to enter a judgment in conformity with this opinion.

ROBINSON, C. J., BEALS, and JEFFERS, JJ., concur.

MILLARD, J. (dissenting)—The trust mortgage in the case at bar gave to the mortgagee managerial powers as to all the assets of the fixture company, the mortgagee to receive as compensation for its services seven and one-half per cent of all moneys paid to the mortgagee or trustee under the mortgage. The mortgagee was authorized to employ a manager for the fixture company's affairs whose reasonable wages should be paid to him the same as other employes of the business. The mortgage contemplated the continued operation of the business, and provided that the fixture company, as mortgagor, should pay to appellant mortgagee from the sales of the merchandise covered by the mortgage the "net balance remaining after deducting the necessary expenses of operating the business of the mortgagor."

There was a provision in the mortgage that, in the event of receivership or foreclosure, appellant mortgagee should first deduct from the funds derived from the mortgage its necessary expenses of administering its trust under the mortgage and that "the balance of all moneys coming into its hands under this mortgage, shall be paid equally and ratably to the present unsecured creditors. . . ."

The mortgage provided that the mortgagor should pay all charges for rent or labor which could become a lien against said property "and take precedence over this mortgage."

Appellant mortgagee never took over the control of the business and there is no showing that appellant mortgagee ever demanded or received any accounting of the application of the proceeds of sales of merchandise or made any inquiry as to the fixture company's operation. When the company closed its doors it was hopelessly insolvent.

I am clear from a reading of the mortgage that the terms of that instrument placed labor liens ahead of the mortgage. Under the statute (Rem. Rev. Stat., § 1149 [P. C. § 9737]) the persons performing labor in the operation of this company were entitled to a prior lien on all of the property of the fixture company, which was used in the operation of the fixture company's business, to the extent of the money due to the person from the fixture company for labor performed within six months next preceding the filing of his claim therefor. The statute further provides:

". . . and no mortgage, deed of trust or conveyance shall defeat or take precedence over said lien."

The mortgage was, in fact, an assignment for benefit of creditors. At the time it executed the mortgage, and surrendered its right of control to appellant mortgagee to be exercised at will, the fixture company was insolvent. The appellant was paid to manage the business. Whether appellant mortgagee did or did not manage the business is not determinative of the question before us. This conveyance or mortgage was intended as an absolute divestiture of the fixture company's title to the property as well as all control over it; it was made for the purpose of securing a distribution of its proceeds among the mortgagor's creditors;

hence it was, in legal effect (no matter by what name it was called), an assignment for the benefit of creditors. It follows that the costs and expenses incurred by the assignee or mortgagee in the administration of the trust must be paid out of the assigned assets in preference to all other claims, for there are no clear assets subject to distribution until the proper expenses of administration are paid. 5 C. J. 1039, 1277.

Under the statute and the authorities, the labor liens are prior to the mortgage, which is, as stated before, an assignment for benefit of creditors, which mortgage or assignment by its own terms placed labor liens ahead of the mortgage.

The judgment should be affirmed.