[No. 30717. Department Two. September 20, 1949.]

MERRITT V. WOLFKILL, *Respondent,* v. LEONARD JOHNSON
*et al., Defendants,* PUGET SOUND PRODUCTION CREDIT
ASSOCIATION OF MOUNT VERNON, *Appellant.*[1]

*Warren J. Gilbert* and *Harwood Bannister,* for appellant.

*H. Jim Hart* and *Arnold R. Zempel,* for respondent

*Dana E. Brinck* and *F. L. Graybill, amici curiae.*

ROBINSON, J.—This appeal presents legal problems in the field of chattel mortgages.

For some years, the defendants, Johnson and wife, have been engaged in raising and fattening chickens and turkeys for the fresh meat market. In so doing, they purchased a great deal of feed from the plaintiff, Wolfkill. In July, 1947,

[1]Reported in 209 P. (2d) 775.

Wolfkill instituted this action against the defendants, seeking recovery on three causes of action; the first, upon a promissory note, dated March 4, 1946, for two thousand dollars, payable to the First National Bank of Mount Vernon, one thousand dollars one hundred eighty days from date, on which note the plaintiff was an indorser and which he had been called upon to pay by reason of such indorsement; the second, on a promissory note dated March 4, 1947, for five hundred dollars, payable May 15, 1947; and the third, on an indebtedness of $2,734 for grain and feed sold and delivered between April 24, 1947, and July 1, 1947. A writ of attachment was prayed for and was issued, and, pursuant thereto, on July 14, 1947, the sheriff took possession of 5,750 young chicks, various articles of equipment used in the business, and all the feed on the Johnsons' premises.

On July 25, 1947, the Puget Sound Production Credit Association of Mount Vernon, a corporation set up under the Federal farm credit act of 1933, with leave of court, filed a complaint in intervention, setting up that it held certain unpaid and overdue notes of the Johnsons; that the indebtedness was secured by two chattel mortgages made by the Johnsons; and that the property attached was subject to the lien of the mortgages. It further alleged that the property owned by the defendants was insufficient to discharge their indebtedness to the intervener, and prayed (1) that a receiver be appointed to liquidate the Johnsons' property; (2) that it have judgment against the defendants for $21,976.71, with interest and attorneys' fees; (3) that the judgment be decreed to be a first and superior lien on all the property described in the mortgage; and (4) that the property be sold to satisfy the judgment.

The first of the mortgages was dated May 1, 1946, given to secure payment of $21,760, according to the terms of a promissory note for that amount, payable on demand or May 5, 1947; the second, a supplemental chattel mortgage, dated July 2, 1947, reciting that it was given to secure payment of $22,850.77, according to the terms of certain promissory notes, namely, the promissory note of May 1, 1946,

on which there was a balance due of $20,850, a note dated September 24, 1946, for $7,222, payable on demand or May 5, 1947, and a promissory note dated July 2, 1947, for $2,000, payable on demand or July 21, 1947. The evidence shows that no advances were made under the note dated July 2, 1947, for $2,000. Both mortgages covered all of the equipment and other personal property used by the defendants in conducting their business and all of the poultry then on hand. The last mortgage covered the exact property which was attached by the sheriff in this case. Each mortgage contained an after-acquired property clause and a clause securing future advances.

The Johnsons defaulted as to plaintiff's complaint and as to the complaint in intervention also, and the controversy at the trial was wholly between the plaintiff and the intervener; and so it is on this appeal.

The plaintiff contended at the trial, and also in this court, (1) that the mortgages were procured by fraud and were, therefore, invalid; (2) that they were also invalid under the rule laid down in *Miller v. Scarbrough,* 108 Wash. 646, 648, 185 Pac. 625, as follows:

"Under the decisions of this court, where the mortgagor has the right to continue in possession of the chattels and to dispose of them in the usual course of trade, the mortgage itself, or some collateral agreement, must provide, in order for it not to be held void as a matter of law as to creditors, that the mortgagor shall, as he sells the property, apply the proceeds to the mortgage debt or account for such sales."

The appellant challenged all three of these contentions, and particularly that either the baby chicks listed in the mortgages or the equipment therein listed constituted a shifting stock of goods, and urged that, as Wolfkill sold feed to the Johnsons with full knowledge of the existence of the mortgages and of their terms and conditions, no intent was shown that the mortgages were made to defraud creditors.

Toward the close of the trial, the trial judge announced that he had concluded that the mortgage of July 2, 1947, had not been procured by fraud, giving his reasons for that conclusion which we regard as adequate and sound. How-

ever, in pronouncing his memorandum opinion, the trial judge held the mortgage invalid as to the chicks as against the Johnsons' creditors, but valid as to the articles of equipment listed therein. The trial judge entered the following conclusions of law:

"(1) As between the Intervener and the Defendants, the mortgage dated July 2, 1947, made, executed and delivered by the Defendants to the Intervener is a valid and subsisting mortgage.

"(2) Intervener is estopped to assert the validity of the mortgage of July 2, 1947, as to creditors insofar as the chickens are concerned.

"(3) The mortgage of July 2, 1947, is valid as to the other chattels therein described and constitutes a first and paramount lien on said chattels.

"(4) Plaintiff is entitled to all the proceeds from the sale of the chickens described in the Mortgage of July 2, 1947, which said chickens were levied upon under the writ of attachment herein issued, such proceeds to be applied against the judgment of the Plaintiff against the Defendants herein.

"(5) The Intervener is entitled to a decree foreclosing its mortgage of July 2, 1947, insofar as the other chattels therein are concerned and the proceeds from such foreclosure to apply on the said judgment of the Intervener."

Judgment was entered in accordance with, and based upon, the above conclusions. On this appeal, the Puget Sound Production Credit Association has specifically challenged conclusions of law Nos. 2 and 4.

Plaintiff, Wolfkill, designating himself in his brief as respondent and cross-appellant, contends that the court erred in holding that the mortgages were valid as to the chattels covered, which were of a nonshifting nature. However, we find no notice of cross-appeal in the record or any bond filed by Wolfkill for costs; that is to say, that Wolfkill has not perfected any cross-appeal on that point or any other.

▮ We will say, however, that we are quite convinced that the trial court correctly held that the lien of the mortgage of July 2, 1947, on the equipment used in operating the chicken ranch was good and valid as against attaching

creditors. See *Lung v. Bank of California,* 127 Wash. 615, 619, 221 Pac. 293.

The appellant's appeal cannot be so summarily disposed of. A number of cases could be cited to support that portion of the judgment adjudging that the mortgagee got no valid lien on the chickens as against the creditors of the Johnsons. Many, possibly even more, could be cited to the contrary. Both lines of cases can be easily found in the law review articles and the A. L. R. note hereinafter cited. Citations and discussion of the Washington cases are fully set out in the splendid article by Mr. W. Z. Kerr entitled: "Chattel Mortgages on Shifting Stocks of Goods in Washington." 11 Wash. L. Rev. 199. That article concludes as follows:

"The law varies greatly in the various states of the Union, on almost every phase of the problem. From this study it is evident that the law of Washington has never been certain but has undergone first, a period of hostility to such mortgages, then a rather liberal encouragement of them and finally again a hostile attitude toward them. Without legislation, it is highly improbable that this form of mortgage will ever be useful to merchants for financing new loans. Whether this is a desirable situation is certainly debatable. The committee that drafted the Uniform Chattel Mortgage Act attempted to protect purchasers from such mortgagors in the ordinary course of business but exempted from the protection subsequent mortgages, pledges, sales in bulk and sales in payment of antecedent debts. They also followed what is probably a minority rule by permitting a mortgage where the mortgagor may sell if he replaces the stock or keeps the amount of the stock up to a minimum value. These two changes in the Washington law are necessary if merchants are to be able to use this form of security for their financing.

"Until some such change in the law is made this form of security has little, or no, utility for borrowing funds. It has been used and still may be used in the sale of a business, or the sale of a partner's interest in a business. It has been used and still has utility in liquidating excess stocks or in winding up a business in an orderly way where creditors have confidence in the honesty of the mortgagor."

For additional discussions of Washington case law, see 2 Jones on Chattel Mortgages and Conditional Sales (Bowers Edition) 140, § 408a.

See, also, "Mortgages of Merchandise" by David Cohen and Albert B. Gerber, 39 Col. L. Rev. 1338. The concluding paragraphs of this article read as follows:

"The treatment by the courts of the problem of partial validity, the rules developed from varying provisions relating to the application of the proceeds of sales to the debt, and the other peculiar developments in this phase of the law reveal an urgent need for reexamination of the entire question. All holdings in which a creditor is given a status equal to that of a mortgagee are based primarily on the interest in the protection of creditors. But the courts should also understand that this protection has the boomerang effect of hindering the establishment and maintenance of mercantile enterprises. Since this source of credit is both desirable and necessary the question posed is simply one of which interest is paramount. With the development of modern systems of distribution of credit information the need for judicial protection of creditors becomes less important.

"In most jurisdictions the rigidity of the common law still persists. Reluctant though courts may be to depart from their traditional rules and conceptions, reconsideration of the entire situation in the light of today's credit problems would indicate a healthful attitude on the part of the courts to keep up with the times. Such reconsideration should result in placing liens upon merchandise in the same category as liens upon any other personal property."

We are, however, not at liberty to decide cases on considerations of policy. See, also, Annotation in 73 A. L. R. 236 on "Validity of chattel mortgage where mortgagor is given right to sell." Note particularly the discussion of many Washington cases under the subhead, "Agreement to apply part of proceeds to mortgage debt," beginning on page 279.

■ In our opinion, the trial judge practically settled all substantial issues in this cause when he announced, during the trial, that he had arrived at the conclusion that the mortgages were not tainted by fraud. They were regular in

form and were promptly put on record. The respondent was in no way deceived; he had knowledge of the mortgages and that the Johnsons were selling the chickens as they became large enough to market. It was to Wolfkill's benefit that the Johnsons should be able to keep their business venture going. They purchased a great deal of feed from him, although they were very slow to pay for it until they began to get United States government funds through the appellant, Puget Sound Production Credit Association.

The mortgage did not give Johnson the right to sell chickens and to apply the proceeds of such sales to his general use or needs. In fact, he was instructed that, if any large sales were made by him, the checks in payment therefor should be made out to the appellant and himself jointly, and appellant complained to him many times because this was not done. We do not feel that this case falls within the shifting stock decisions, and we agree with the trial judge that no fraud was found by the evidence.

In giving his memorandum opinion, the trial judge said that the production credit association was estopped from asserting the liens of its mortgages. He did not explain why it should be estopped, and we do not see any reason for such an estoppel.

In our opinion, the mortgages were valid liens, both as to the chickens and as to the equipment therein listed. We will, therefore, reverse paragraph 1 of the judgment appealed from, which paragraph directs the sheriff to pay over to the plaintiff, Wolfkill, all moneys received from the sale of the attached chickens, since, in our opinion, the Puget Sound Production Credit Association of Mount Vernon has a first and prior lien upon such proceeds. The remainder of the judgment will stand affirmed. It is so ordered.

SIMPSON, C. J., SCHWELLENBACH, and GRADY, JJ., concur.