[No. 35302.    Department Two.    February 16, 1961.]

UNITED STATES RUBBER COMPANY, *Respondent*, v. GLEN A. YOUNG *et al.*, *Defendants*, HUNKY SHAW, *Appellant*.[1]

[1]Reported in 359 P. (2d) 315.

*Velikanje & Moore, Paul M. Goode,* and *Charles C. Countryman,* for appellant.

*Homer B. Splawn,* for respondent.

ROSELLINI, J.—This case is before the court on the findings of fact, no error having been assigned thereto. They show that the action was brought by the United States Rubber Company to obtain the appointment of a receiver for Glen Young's Sporthaus, a sporting-goods store in Yakima, Washington. The appellant, who held a chattel mortgage on the fixtures and the shifting stock of merchandise in that establishment, intervened, claiming a balance due of $8,943.17, plus interest, and asking foreclosure of the mortgage.

The stock of goods and fixtures were sold and the proceeds were held by the receiver, pending the outcome of the action.

It was conceded that the mortgage was valid in form and duly recorded, and that it was entitled to priority insofar as the fixtures were concerned. But the receiver questioned the priority of the appellant's claim upon the proceeds of the sale of the merchandise because he had failed to require a monthly accounting from the mortgagor and had permitted the latter to draw upon the proceeds of the business for his personal living expenses, for which no provision had been made.

The controlling provisions of the mortgage were contained in the following paragraph:

"It is understood and agreed that until the total indebtedness secured by this mortgage is fully paid and satisfied, said mortgagor shall pay unto said mortgagee a minimum amount of $250.00 per month from the proceeds of the sale of said goods, wares and merchandise remaining after deducting the necessary expenses of operating the business of the mortgagor and the purchase of new merchandise stock for cash, sufficient for the needs of said business, together with all amounts collected and accounts receivable, and for the above purpose a true and correct accounting

shall be had between said mortgagor and mortgagee on or before the 10th day of each and every month, during the life of this contract, of the proceeds of the said business for the preceding month. The mortgagor also agrees to at all times keep an inventory of merchandise for sale of an amount based upon his cost of at least Ten Thousand and No/100 Dollars ($10,000)."

While the appellant was permitted to examine the books and knew generally the gross sales figures and cost of operation, he never required a formal accounting and did not know what disposition the mortgagor was making of the proceeds of the business. Large purchases of merchandise were made on credit, and the appellant voiced no objection to this. The inventory of merchandise complied with the requirements of the mortgage, being at all times in excess of ten thousand dollars.

From these findings, the court concluded that the appellant had lost the lien of his mortgage on the merchandise and should share with the general creditors in the proceeds of such merchandise. Error is assigned to this conclusion.

The apparent theory of the trial court was that the appellant's failure to police the accounting rendered the mortgage fraudulent as to creditors.

While this court has not always been consistent in its treatment of questions pertaining to shifting stocks of goods which remain in the possession of mortgagors to be disposed of in the usual course of trade (see Kerr, Chattel Mortgages on Shifting Stocks of Goods in Washington, 11 Wash. L. Rev. 199), the following rule has been derived: In order to be valid, such a mortgage in itself should provide the manner of maintaining and handling the stock, with provisions for accounting, and payment of the mortgage debt from the proceeds of the sales, after allowing for the expenses of the business and of the keeping up or building up thereof, *to the end that creditors can, by an examination of the records, discover the real terms and obligations of the mortgage. Tahoma Finance Co. v. Shannon*, 138 Wash. 90, 244 Pac. 271.

■ In other words, such a mortgage is not fraudulent in law if it is properly executed and filed for record and contains the necessary terms. It is not necessary that all of the proceeds from sales should be applied on the debt, or even all of the net proceeds, but the agreed terms of payment must be set forth. If notice is thus given to those who thereafter extend credit to the mortgagor, they cannot claim that the mere existence of the mortgage is fraudulent.

■ It is true that the transaction may become fraudulent if the mortgagee knowingly permits the mortgagor to appropriate to his own use funds which should have been applied to the mortgage. But the mere fact that all of the funds which should be applied to the payment of the mortgage debt are not so applied, does not raise a presumption of fraud. This was the gist of our holding in *Simpson v. Combes*, 107 Wash. 575, 182 Pac. 566. *In re Cascade Fixture Co.*, 8 Wn. (2d) 263, 111 P. (2d) 991, and *Wolfkill v. Johnson*, 34 Wn. (2d) 759, 209 P. (2d) 775, are in accord. As we suggested in *Simpson v. Combes, supra*, if there were any evidence tending to show that there was an agreement to accept lesser payments than those provided in the mortgage, fraud might be found. There is no hint of such an agreement in this case.

■ We are at a loss to see how the appellant's failure to require a strict accounting from the mortgagor affected in any way the rights of the general creditors. They knew or should have known of the appellant's claim when they extended credit to the mortgagor; a simple inquiry would have revealed the mortgage balance. But the rendering of a monthly account, as between mortgagor and mortgagee, would neither decrease the mortgage debt nor apprise the general creditors of its status. The only way in which the appellant could enforce payment of his claim was to foreclose the mortgage. The brief of the respondent does not suggest how this would have benefited the general creditors. If the rule adopted by the trial court is the law, the result is that one who extends credit to a merchandiser and attempts to protect himself by a mortgage on a shifting stock of goods as security, even though he complies with the

recording statutes, becomes an insurer of the mortgagor's performance of the contract. Such a liability would render the security valueless.

We think this court has set forth the correct rule in *Wolfkill v. Johnson, supra,* wherein we held that such a mortgage is valid as against general creditors, in the absence of a showing of actual fraud. A mere failure to demand and enforce strict performance is not fraud in itself. There is no finding in this case, and no. evidence in the record, that the appellant was guilty of any intent to deceive, or of any act which did in fact deceive the general creditors.

Paragraph three of the judgment is reversed and the cause remanded with instructions to reinstate the prior lien of the appellant.

FINLEY, C. J., HILL, WEAVER, and OTT, JJ., concur.